# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JON LARAMORE**
**APRIL E. SELLERS**
**SHIV GHUMAN O'NEILL**
Faegre Baker Daniels LLP
Indianapolis, Indiana

**A.J. MANION**
Manion Stigger
Evansville, Indiana

ATTORNEYS FOR APPELLEES:

Evansville Vanderburgh School Corporation
**PATRICK A. SHOULDERS**
**DIRCK H. STAHL**
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

EVSC Foundation, Inc.
**RICHARD T. MULLINEAUX**
**CRYSTAL G. ROWE**
**WILLIAM F. ENGLISH**
Kightlinger & Gray, LLP
New Albany, Indiana

FILED
Mar 06 2013, 8:28 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALVA ELECTRIC, INC., ARC CONSTRUCTION CO., INC., DANCO CONSTRUCTION, INC., DEIG BROTHERS LUMBER & CONSTRUCTION CO., INC., EMPIRE CONTRACTORS, INC., PEYRONNIN CONSTRUCTION CO., INC., WEDDLE BROTHERS CONSTRUCTION COMPANY, INC., and WINK CONSTRUCTION, INC., | ) ) ) ) ) ) ) ) ) |
| Appellants-Plaintiffs, | ) ) |
| vs. | ) No. 82A01-1201-PL-2 ) |
| EVANSVILLE VANDERBURGH SCHOOL CORPORATION and EVSC FOUNDATION, INC. , | ) ) ) |
| Appellees-Defendants. | ) |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Gregory A. Smith, Special Judge
Cause No. 82C01-1102-PL-78

**March 6, 2013**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Eight contracting firms ("Contractors"),[1] on behalf of themselves and all similarly situated taxpayers within the district of Evansville Vanderburgh School Corporation ("School Corporation"), sued School Corporation and EVSC Foundation, Inc. ("Foundation") for declaratory judgment and injunctive relief, claiming that School Corporation's renovation of an administration building should have been subject to the competitive bidding procedures required for a public work project under Indiana Code section 36-1-12-4 and that the actions taken to accomplish the renovation constituted an antitrust violation under Indiana Code section 24-1-2-3. Contractors filed a motion for summary judgment and School Corporation and Foundation each filed cross-motions for summary judgment. The trial court denied Contractors' motion and granted summary judgment in favor of School Corporation and Foundation.

On appeal, we address the following consolidated and restated issues:

I.  Whether the issues before this court are moot;

II.  Whether the trial court erred in granting summary judgment in favor of School Corporation and Foundation on Contractors' claim:
(A) under Indiana's Public Lawsuit Statute ("Public Lawsuit Statute"), Indiana Code sections 34-13-5-1 through -12, because the renovation of the administration building constituted a public work project that should have been subject to the public bidding laws of Indiana Code chapter 36-1-12; and
(B) because the combination of the six contracts used to renovate the administration building was a "scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for a private or public work," in violation of Indiana's Antitrust Act ("Antitrust Act"), Indiana Code sections 24-1-2-1 through -12.

---

[1] The Contractors include the following firms: Alva Electric, Inc., Arc Construction Company, Inc., Danco Construction, Inc., Deig Brothers Lumber & Construction Co., Empire Contractors, Inc., Peyronnin Construction Company, Inc., Weddle Brothers Construction Company, Inc., and Wink Construction Inc.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY[2]

School Corporation is the public school corporation in Evansville, Vanderburgh County, Indiana, which exists under the authority of Indiana Code sections 20-23-4-1 through -45. Foundation is a private, not-for-profit, public school endowment corporation "formed to provide educational resources within the meaning of Indiana Code [section] 20-47-1-2 to the . . . School Corporation and to operate exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, and for educational, charitable and scientific purposes within the meaning of Indiana Code 20-47-1-2." *Id*. at 707. Contractors do business and pay taxes in Vanderburgh County and allege that the contract for the renovation project at the heart of this dispute was not awarded pursuant to public bidding laws.

In 2009, the State of Indiana announced a $6.5 million reduction in School Corporation's annual funding. Thereafter, School Corporation investigated various cost-saving initiatives. One of such initiatives involved moving all of School Corporation's administrative offices, which were located in multiple buildings throughout Evansville, into an existing building on Walnut Street ("the Building") owned by School Corporation and previously used as a warehouse. According to School Corporation, the move was designed to maximize efficiency, preserve resources, and decrease School Corporation's costs in the

---

[2] We held oral argument on November 20, 2012 in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

amount of $517,360 per year. *Appellants' App.* at 983. To fit School Corporation's needs, however, renovation of the Building was necessary.

In December 2009, the Facilities Director for School Corporation contacted an Evansville architectural firm, Hafer Associates ("Hafer"), to inquire about the feasibility of renovating the Building for use as a school administration building, and Hafer confirmed that the renovation was feasible. On January 11, 2010, School Corporation publicly announced that it intended to relocate its administrative offices to the Building. The next day, Hafer held a meeting with officials of School Corporation to discuss School Corporation's needs, aesthetic preferences, and approximate budget. School Corporation hired Hafer to design the renovation. During the design period, Hafer, who understood School Corporation to be its sole client, held meetings on the status of the project. No one from the Foundation attended those meetings. Around June 1, 2010, Hafer mailed plans for the renovation to School Corporation. Hafer believed School Corporation would advertise the project to prospective contractors and solicit bids. School Corporation paid Hafer approximately $250,000 for the design work.[3]

In August 2010, after Hafer's design was finalized and sealed, School Corporation determined it did not have sufficient funds in its capital projects fund to pay for the renovation. School Corporation also determined that using the debt service fund to finance

---

[3] It is unclear exactly how much Hafer was paid for its services on the project. By deposition, Jeffrey Justice, Managing Principal of Hafer, testified that School Corporation paid Hafer for invoiced services in the amount of $250,000. *Appellants' App.* at 261-62. Foundation's contract with Industrial Contractors, Inc. ("ICI"), the company that completed the Building renovations, provides for, what appears to be, an additional payment to Hafer in the amount of $325,595. *Id.* at 313.

4

the project was an undesirable option for several reasons, including the delay and added expense involved in the issuance of bonds and the resulting need to raise taxes to obtain sufficient funds to repay the bonds.

On October 29, 2010, School Corporation officials met with representatives of Industrial Contractors, Inc. ("ICI") to discuss the renovation of the Building. In the previous years, ICI had bid on at least ten projects for School Corporation through public bidding, but had been awarded only one project—a roofing project. School Corporation understood that, while it could not legally take on debt, ICI could finance the renovation of the Building. School Corporation "pitched" to ICI an arrangement to renovate the Building, whereby School Corporation would convey the Building to Foundation, and Foundation then would contract with ICI to renovate the Building. *Appellants' Br*. at 6; *Appellants' App*. at 293. Foundation would then pay ICI over time for the renovations. Specifically, the renovated Building would then be paid for by Foundation with a "deferred payment schedule guaranteed by [a] rent/lease agreement with [the School Corporation]." *Appellants' App*. at 293. School Corporation officials told ICI that this arrangement would expedite the project because Foundation was a private organization and was not subject to public bidding laws. *Id.* at 275. At the time of the October meeting, Foundation had neither been consulted with nor advised about the proposal.

On November 2, 2010, ICI expressed interest in performing the renovation. School Corporation did not solicit, meet with, or accept bids or proposals from any other contractor, nor did it disclose at any public meeting its decision to select ICI to perform the renovation.

5

ICI was the only contractor School Corporation approached. By November 9, 2010, ICI was meeting with officials of School Corporation and its attorney, Patrick Shoulders ("Shoulders"), who indicated that he would provide a "bankable" term sheet to ICI. *Id.* at 297. Shoulders also indicated that he would work out a conflict of interest waiver so that he could represent both the School Corporation and ICI. *Id.* On November 12, 2010, ICI sent School Corporation a formal proposal offering to complete the project at a cost of $6,585,318, plus a finance charge totaling $608,619 over the five-year payment schedule. *Id.* at 19, 389. School Corporation agreed to this proposal without negotiating the price, and ICI began work on the project in December 2010. *Id*. at 280; *Appellants' Br*. at 7.

Also in December 2010, School Corporation approached Foundation about the renovation project. School Corporation explained that it needed Foundation's help with the project because School Corporation "did not have the funds and because the Foundation, unlike the School [Corporation], was not subject to public bidding laws." *Id*. at 19. School Corporation explained that it would buy the Building back from Foundation once the renovation was complete. While Foundation had not participated in selecting ICI, Foundation representatives indicated that they would cooperate.

In order to facilitate the renovation of the Building, ICI, Foundation, and School Corporation, in various combinations, entered into six contracts. On December 13, 2010, after seeking advice from independent counsel, Foundation entered into an "Agreement for Purchase and Sale of Real Estate" ("Purchase Agreement") with School Corporation, to purchase the Building from School Corporation for one dollar. *Appellants' App*. at 485-500.

6

On January 5, 2011, Foundation voted to approve the acquisition of Building from School Corporation, *id.* at 941-42, and on January 19, 2011, School Corporation conveyed Building to Foundation by "Special Warranty Deed" ("the Warranty Deed"). *Id*. at 944-48.

Foundation entered into a construction contract with ICI on January 21, 2011 ("the Construction Contract"). *Id*. at 300-62. "The Foundation president indicated that he signed the [Construction C]ontract but that he had no involvement in negotiating the contract, and further indicated he was not aware how the School [Corporation] and ICI agreed on the payment schedule, nor did he know how the School [Corporation] chose ICI to be the contractor." *Id*. at 20. Pursuant to the terms of the Construction Contract, ICI agreed to finance the work performed on Building. In connection with that promise, Foundation executed a promissory note ("the Promissory Note") in ICI's favor in the amount of $6,585,318 plus five percent interest, to be paid in yearly installments over a period of five years, as ICI had outlined in its formal renovation proposal to School Corporation. *Id*. at 446-47. Under the Promissory Note, the schedule of payments from Foundation to ICI was as follows: $800,000 due on January 31, 2011, $1,600,000 due on January 31, 2012, and $1,597,979 due annually on January 31 of years 2013 through 2015. *Id*. at 446. The Promissory Note did not state the total cost of the project; however, when the Promissory Note, including interest, is fully paid, Foundation will have paid $7,193,937 for the renovation of the Building. The Promissory Note was secured by a mortgage on the property in favor of ICI ("the Mortgage"). *Id.* at 514-20. The Mortgage was ICI's security for the

7

payments owed by Foundation under both the Construction Contract and the Promissory Note.

On January 24, 2011, three days after Foundation and ICI executed the Promissory Note, School Corporation entered into an installment contract to repurchase the property from Foundation ("the Installment Purchase Agreement"). *Id*. at 398-413. Under the terms of the Installment Purchase Agreement, School Corporation had the right to inspect the property during the renovation, and Foundation agreed "not to allow any changes in the [Construction] Contract or the plans and specifications without the prior written consent of [School Corporation]." *Id*. at 398. Additionally, the Installment Purchase Agreement set forth a schedule of installment payments to be made by School Corporation to Foundation. *Appellants' App*. at 21, 413. The dates and amounts of School Corporation's payments under the Installment Purchase Agreement were identical to Foundation's obligations to ICI under the Promissory Note.

As additional security for Foundation's obligations to ICI, on January 24, 2011, Foundation collaterally assigned to ICI ("the Collateral Assignment") Foundation's right under the Installment Purchase Agreement to receive payments from School Corporation in the event Foundation defaulted on its payments under the Construction Contract to ICI. *Appellants' App*. at 21. An ICI official testified during a deposition that ICI would not have entered into the Construction Contract with Foundation without the Promissory Note and the Collateral Assignment as additional security. *Id*. at 21.

School Corporation paid Foundation the first installment of $800,000 on the date it entered into the Installment Purchase Agreement. *Id*. at 21. About a week later, on January 31, 2011, Foundation paid $800,000 to ICI. *Id*. During a deposition, the president of Foundation testified that he assum[ed] the Foundation made its $800,000 payment to ICI using the same $800,000 that School Corporation had just paid to Foundation. *Id*.

On February 7, 2011, Contractors filed suit against School Corporation and Foundation, seeking declaratory judgment and injunctive relief. Contractors subsequently amended their complaint to include two claims. First, as taxpayers in School Corporation's district, Contractors alleged, pursuant to the Public Lawsuit Statute, Indiana Code chapter 34-13-5, that the renovation should have been subject to public bidding. As potential bidders for the renovation project, Contractors also alleged, pursuant to the Indiana Antitrust Act, that School Corporation and Foundation engaged in a scheme to restrict the bidding for the renovation project to just ICI. *See* Ind. Code § 24-1-2-3.

Contractors sought relief in the form of: (1) a declaration that "each of the agreements used in furtherance of the scheme" was void because the project violated the public bidding laws and were an illegal circumvention of the Antitrust Act; (2) injunctive relief precluding the further expenditure of public funds on the transaction; (3) an order that School Corporation and Foundation fully comply with a public records request; and (4) costs and attorney fees. *Appellants' App*. at 55.

On February 18, 2011, eleven days after filing their complaint, Contractors filed a motion for preliminary injunction. *Id*. at 14. The Indiana Supreme Court appointed a special

9

judge for this proceeding on March 11, 2011, but that judge was unable to serve and a second special judge was appointed March 31, 2011. *Id*. at 12, 13. The trial court set a hearing on the preliminary injunction for July 1, 2011, but that hearing was vacated by agreement of the parties because the renovation of the Building was complete. *Appellants' Br*. at 3.

Contractors filed a motion for summary judgment in August 2011, and School Corporation and Foundation each filed separate cross-motions for summary judgment. Foundation also moved to strike certain materials filed by Contractors. The trial court heard argument on the motions for summary judgment and the motion to strike on November 3, 2011, and denied the motion to strike that same day. Also on that day, a counterclaim, previously filed by Foundation, was dismissed on Contractors' motion.

After conducting a hearing, the trial court granted School Corporation's and Foundation's motions for summary judgment and denied Contractors' motion for summary judgment, concluding, among other things, that the renovation project was not a public work subject to competitive bidding requirements. The trial court's reasoning was reflected in the following conclusions:

> 11. This Court believes that while this transaction[] may smack of 'favoritism most foul' or may not pass the 'smell test,' each and every individual transaction between the School [Corporation] and the Foundation, and the Foundation and [ICI] are entirely legal and authorized by statutes.

> 12. The Court concludes that there is no violation of the law triggering a violation of a public lawsuit statute as the work being done to property of the Foundation renders this no longer a "public improvement" by a "municipal Corporation" and, therefore, finds that summary judgment in favor of the defendants as to any claim under the public lawsuit statute must be granted.

> 13. The Court does conclude[] that the renovation of the building is in fact

10

being financed with public funds and particularly finds that those public funds are in fact traceable despite the contention by the School [Corporation] and the Foundation that the funds paid by the School [Corporation] are then co-mingled with the Foundation's other funds, especially in light of the synchronization of the payment schedules in the transactions at issue.

14.     However, the Court concludes the public funds are not deposited to a fund of a "municipal corporation" or "political subdivision" as it is undisputed that the Foundation is neither.

15.     Additionally, while the Court believes that there is no doubt that the School [Corporation] engaged in the transaction in part to circumvent the public bidding statutes, it is equally clear that those statutes do not apply to the Foundation, and the School [Corporation] was entirely within its rights to transfer the property to the Foundation, even for little or no consideration, which is allowed by the statutes.  (See I.C. 36-1-11-5.5)

16.     Furthermore, as the parties agreed that intent or motive of the School [Corporation] or the Foundation is not relevant or material to the Court's decision herein, the Court must conclude that the School [Corporation] and Foundation were within their legal right to enter into these transactions and that summary judgment in favor of the School [Corporation] and the Foundation herein must be granted.

. . . .

22.     The project at issue is the renovation of a "public building" which was owned before, and will be again after the renovation, by the School [Corporation], which is a public entity under the definition of the statutes, and the School [Corporation] is paying for the renovation with public money.

23.     However, the transfer of the building to the Foundation takes the matter out of the requirements for public bidding as the Foundation is not subject to the public bidding requirements, and the transfer also takes the matter out of the public lawsuit statutes for the reason that the Foundation is not a municipal corporation.

24.     The public bidding statutes do not apply unless the public work is performed or contracted for by a political subdivision or their agencies, regardless of whether it is performed on property owned or leased by the political subdivision or agency.  (I.C. § 36-1-12-1.)  Here the property was deeded to the Foundation who actually contracted for the work.

11

*Appellants' App.* at 26.

Using the following language, the trial court also concluded that there was no violation of the Antitrust Act:

> As this Court concludes that for the above reasons the case does not meet the criteria for a Public Lawsuit and finds no violation of the Public Bidding laws under the facts of this case, the Court does not and can not find a scheme, contract or combination to restrain or restrict bidding, as the series of transactions at issue herein were "powers, rights, or privileges now existing or conferred by law upon a person" to-wit the Foundation and the School [Corporation]. Therefore, [Contractors'] Anti-Trust violation claims can not [sic] succeed and summary judgment should be entered in favor of [Foundation and School Corporation].

*Id.* at 29. Contractors now appeal.[4]

## DISCUSSION AND DECISION

The parties here do not dispute the facts; instead, they disagree regarding the legal effect of those facts. As such, the resolution of this case is particularly suited to summary judgment.

> When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Kroger Co. v. Plonski,* 930 N.E.2d 1, 4-5 (Ind. 2010) (citations omitted). The trial court's

---

[4] We commend the trial court on its thorough findings, which greatly facilitated our appellate review.

decision on summary judgment "'enters appellate review clothed with a presumption of validity.'" *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.,* 867 N.E.2d 203, 211 (Ind. Ct. App. 2007) (quoting *Malone v. Basey,* 770 N.E.2d 846, 850 (Ind. Ct. App. 2002), *trans. denied*). Moreover,

> [a] grant of summary judgment may be affirmed upon any theory supported by the designated evidence. While the trial court here entered specific findings of fact and conclusions of law in its order granting summary judgment for the appellees, such findings and conclusions are not required and, while they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment.

*Van Kirk v. Miller,* 869 N.E.2d 534, 539-40 (Ind. Ct. App. 2007) (citations omitted), *trans. denied.* Our standard of review is not altered by the fact that the parties have filed cross-motions for summary judgment, and we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Alexander v. Marion Cnty. Sheriff*, 891 N.E.2d 87, 92 (Ind. Ct. App. 2008), *trans. denied.*

## I.     Mootness

Before addressing the merits, we must address Foundation's contention that Contractors' claims are moot because the renovation project has been completed and because no effective relief can be granted due to Contractors' failure to join ICI as a party defendant. As a general matter, courts decline to address the merits of moot claims. *Horseman v. Keller*, 841 N.E.2d 164, 170 (Ind. 2006). "A case becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties." *Save Our Sch. Elmhurst High Sch. v. Fort Wayne Cmty. Sch.*, 951

13

N.E.2d 244, 246 (Ind. Ct. App. 2011), *trans. denied.* During the hearing on summary judgment, Contractors' attorney, Jon Laramore ("Laramore"), explained:

> [O]bviously the plaintiffs know that they cannot undo the construction that's already been done at the [Building] and we do not want to undo it, it's not our purpose to penalize anybody who's been involved in this transaction, . . . but what we want is to keep this from happening again, if it's happened once in this format that goes around the public bidding laws, it could happen again. This was an insider's deal, only one contractor was contacted about doing this work and our clients don't want to be left on the outside when public bodies decide to do work, they want to be able to solicit that work through bidding, not just getting work when the person who is making the hiring decisions happens to know about them.

*Tr*. at 10. This sentiment was repeated before this court during oral argument when Laramore again stated that the issue before the court was not whether the Building should be torn down; instead, Contractors were asking the court to decide a legal issue and set a precedent concerning whether a school corporation or other municipal corporation can, in the future, use the same method that School Corporation used to renovate the Building.

"Indiana courts recognize that a moot case can be reviewed under a public interest exception when it involves questions of great public importance." *Ind. High Sch. Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404, 411-12 (Ind. Ct. App. 2001) (citing *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 187 (Ind. Ct. App. 1998), *trans. denied*). "Although Indiana does not require that the issue be capable of repetition, cases falling into the public interest exception usually involve issues that are likely to recur." *Id.* The issues of competitive bidding and the expenditure of taxpayer money are undoubtedly matters of great public interest. We also believe that similar issues are likely to recur in the future as school corporations and other public entities seek alternative methods of achieving their public

14

purposes within tight budgetary constraints. Accordingly, we will address this case upon the merits regardless of whether it is technically moot. *See Save Our Sch.*, 951 N.E.2d at 246-47 (regardless of whether moot, court addressed question concerning closing of public school for stated budgetary reasons because, as question of great public interest, it was likely to recur).

## II. Public Work

Contractors contend that a transaction like the one at issue constitutes a public work under Indiana Code section 36-1-12-2[5] that is subject to the bidding laws under Indiana Code chapter 36-1-12 (the "Public Work Statute"). The Indiana statutes that "provide for free and open bidding on public work projects are designed to protect the rights of the public by ensuring that the process be competitive." *Brooks v. Gariup Constr. Co., Inc.*, 722 N.E.2d 834, 839 (Ind. Ct. App. 1999), *trans. denied*. "The purpose behind competitive bidding requirements is to safeguard the public against fraud, favoritism, graft, extravagance, improvidence, and corruption and to ensure honest competition for the best work or supplies at the lowest reasonable cost." *Gariup Constr. Co., Inc. v. Carras-Szany-Kuhn & Assocs., P.C.,* 945 N.E.2d 227, 235 (Ind. Ct. App. 2011), *trans. denied* (citing *Schindler Elevator Corp. v. Metro. Dev. Comm'n,* 641 N.E.2d 653, 657 (Ind. Ct. App. 1994). "The confidence

---

[5] Indiana Code section 36-1-12-2 provides:

As used in this chapter, "public work" means the construction, reconstruction, alteration, or renovation of a public building, airport facility, or other structure that is paid for out of a public fund or out of a special assessment. The term includes the construction, alteration, or repair of a highway, street, alley, bridge, sewer, drain, or other improvement that is paid for out of a public fund or out of a special assessment. The term also includes any public work leased by a political subdivision under a lease containing an option to purchase.

15

of the public, as well as that of contractors who perform work for public agencies, is dependent upon a school board's compliance with the legal requirements of competitive bidding." *Brooks*, 722 N.E.2d at 839.

The Indiana General Assembly has provided a statutory right to enforce the public work laws under two circumstances. *Shook Heavy & Envtl. Constr. Grp., Div. of Shook, Inc. v. City of Kokomo*, 632 N.E.2d 355, 357 (Ind. 1994). First, the Public Lawsuit Statute, Indiana Code chapter 34-13-5, "permits citizens or taxpayers of the municipality in question to bring an action questioning the validity or construction of any public improvement by the municipality."[6] *Shook*, 632 N.E.2d at 357-58.[7] Second, the Indiana Antitrust Act, Indiana Code section 24-1-2-7, "confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud."[8] *Shook*, 632 N.E.2d at 358. In *City of Fort Wayne v. Pierce Manufacturing, Inc.*, 853 N.E.2d 508, 517 (Ind. Ct. App. 2006), *trans. denied*, our court reasserted that a citizen or taxpayer may challenge a public improvement under the Public Lawsuit Statute, and an unsuccessful bidder may challenge the award of a government

---

[6] For the purposes of the Public Lawsuit Statute, "public lawsuit," in pertinent part, means:

> any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing . . . .

Ind. Code § 34-6-2-124.

[7] The *Shook* court analyzed the facts under Indiana Code chapter 34-4-17, which was repealed in 1998 but was reenacted as Indiana Code chapter 34–13–5 with only technical changes. *City of Fort Wayne v. Pierce Mfg., Inc.*, 853 N.E.2d 508, 517 (Ind. Ct. App. 2006), *trans. denied*.

contract in cases of collusion or fraud under the Indiana Antitrust Act. We address these statutes in turn.

### A. Public Lawsuit Statute

Contractors contend that the Building renovation was a public work project that was contracted for in violation of the bidding requirements of the Public Work Statute, and as such, the trial court erred in granting summary judgment in favor of School Corporation and Foundation.

Contractors maintain that School Corporation renovated the Building "using a technique not used before or since, a technique not contemplated by statute," and that by focusing on each step of their novel approach, rather than looking at the whole transaction, School Corporation and Foundation tried "to camouflage the fact that they failed to comply with fundamental statutory principles governing public bodies." *Appellants' Reply Br*. at 1. Foundation and School Corporation respond that the six transactions in question were authorized by the plain and unambiguous language of multiple Indiana statutes. These statutes allowed: School Corporation to sell the Building as excess property, Ind. Code §§ 20-26-7-1, 36-1-11-5.5; Foundation to purchase, own, hold, and improve the Building, Ind. Code § 23-17-4-2; and School Corporation to acquire the Building back from Foundation, Ind. Code § 36-1-4-5. Additionally, they maintain that nothing in the law required Foundation, as a not-for-profit, to obtain bids on the renovation project prior to entering into the Construction Contract with ICI. School Corporation and Foundation maintain that they

---

[8] The Indiana Antitrust Act, Ind. Code § 24–1–2-7, has had only technical changes since *Shook*.

17

had a right to, and did, rely upon Indiana's well-settled rule of statutory construction, requiring courts to honor the plain and ordinary meaning of the language employed by the legislature.

The Public Work Statute applies to "all public work performed or contracted for by: (1) political subdivisions; and (2) their agencies; regardless of whether it is performed on property owned or leased by the political subdivision or agency." Ind. Code § 36-1-12-1. "Public work" means the "construction, reconstruction, alteration, or renovation of a public building . . . *or other structure that is paid for out of* a *public fund* or out of a special assessment . . . . The term also includes any public work leased by a political subdivision under a lease containing an option to purchase." Ind. Code § 36-1-12-2 (emphasis added). For purposes of public work projects, "public fund" includes "all funds that are: (A) derived from the established revenue sources of a political subdivision or an agency of a political subdivision; and (B) *deposited in a general or special fund of a municipal corporation*, or another political subdivision or agency of a political subdivision." Ind. Code § 36-1-12-1.2(9) (emphasis added). "Political subdivision" means municipal corporation or special taxing district. Ind. Code § 36-1-2-13. School Corporation falls within the definition of "municipal corporation," but Foundation does not. Ind. Code § 36-1-2-10. The importance of these definitions is that a building project undertaken by School Corporation and using public funds falls within the Public Work Statute and must be publicly bid; however, a building project undertaken by Foundation and using private money does not.

Because the resolution of the issues presented turns on our interpretation of various

18

statutory provisions, a brief review of our rules of statutory interpretation is in order. Matters of statutory interpretation present pure questions of law and are therefore reviewed de novo on appeal. *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 995 (Ind. Ct. App. 2003). "The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question." *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). If a statute is facially clear and unambiguous, "no room exists for judicial construction." *Id.* If a statute is susceptible to more than one interpretation, however, it is deemed ambiguous and therefore open to judicial construction. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005). When a statute is deemed ambiguous, other well-established rules of statutory construction come into play. *Id.* "One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature." *Id.* To that end, "we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute." *Id.* Additionally, we review the statute as a whole and presume that the legislature intended the statutory language to be applied logically and not to bring about an unjust or absurd result. *Penny v. Review Bd. of Ind. Dep't of Workforce Dev.*, 852 N.E.2d 954, 960 (Ind. Ct. App. 2006), *trans. denied*. Finally, when interpreting statutes that protect the public interest, courts of appeal must adopt construction best calculated to protect public right as against individual right. *Caston Sch. Corp. v. Phillips*, 689 N.E.2d 1294, 1297 (Ind. Ct. App. 1998). Stated differently, this court is bound to construe legislation in such way as to "oppose prejudice to public interest." *See State ex rel. Bynum v. LaPorte Superior*

*Court No. 1*, 259 Ind. 647, 650, 291 N.E.2d 355, 356 (1973); *State v. Kokomo Tube Co.*, 426 N.E.2d 1338, 1345 (Ind. Ct. App. 1981).

The Indiana General Assembly has enacted a comprehensive statutory scheme regarding the manner in which a school corporation may contract and pay for public work, Indiana Code chapter 36-1-12, or lease a school building from a building corporation incorporated solely for the purpose of constructing or renovating the school building, Indiana Code chapters 20-47-2 and 20-47-4.[9] The former is governed by the Public Work Statute, which applies to public work performed by political subdivisions and their agencies regardless of whether that work would be performed on property owned or leased by the political subdivision.[10] Ind. Code § 36-1-12-1(a). When a public work project will cost at least $150,000,[11] the political subdivision must either enter into a design-build contract as permitted under Indiana Code article 5-30[12] or proceed pursuant to the Public Work Statute.[13] Under the latter, a political subdivision must prepare general plans and specifications

---

[9] In this area of the law, a building corporation is also referred to as a public or private holding company. Ind. Code chapters 20-47-2, 20-47-3, 20-47-4.

[10] This section was amended over time to exempt four specific kinds of entities, none of which is pertinent to the facts before us.

[11] The Public Work Statute also provides, "The cost of a single public work project may not be divided into two (2) or more projects for the purpose of avoiding the requirement to solicit bids." Ind. Code § 36-1-12-19(b).

[12] We do not address any factors pertaining to design-build contract, because the facts before us do not support a claim that School Corporation or Foundation had any intention of entering into a design-build contract.

[13] The legislature has carved out some specific conditions regarding contracts to be performed for professional engineering, architectural, or accounting services, Indiana Code section 36-1-12-5.

describing the work required, file the plan in a place reasonably accessible to the public, and publish notice requesting sealed bids. Ind. Code § 36-1-12-4. The meeting for receiving bids must be open to the public. *Id.* Thereafter, the political subdivision must either award the bid to the lowest responsible and responsive bidder unless it explains the reason for awarding it to another bidder or reject all bids. *Id.* "All plans and specifications for public buildings must be approved by the state department of health, the division of fire and building safety, and other state agencies designated by statute." Ind. Code § 36-1-12-10. Through this scheme, the public is allowed input into the need for the project and the political subdivision is required to protect public funds by awarding the project to the lowest responsible and responsive bidder.

Adding to the legislative and constitutional overlay regarding public work projects, the funding available for building or renovating a public project, especially for a school corporation, is also highly regulated. Indiana Code article 20-40 allows, and in some cases requires, school corporations to establish certain funds. The Indiana Code lists at least sixteen funds, including the general fund, Indiana Code chapter 20-40-2; capital projects fund, Indiana Code chapter 20-40-8; and debt service fund, Indiana Code chapter 20-40-9. These funds are regulated both as to the manner in which money can be deposited into them and as to the things for which money can be spent from them. For example, money in a capital projects fund may be used to pay for planned construction, repair, replacement, or remodeling; site acquisition; site development; and repair, replacement, or site acquisition that is necessitated by an emergency. Ind. Code § 20-40-8-10. Money in a capital projects

21

fund may also be used to pay for "leasing or renting existing real estate," but not for payments authorized under Indiana Code chapter 20-47-2 for lease purchase agreements. Ind. Code § 20-40-8-15. Instead, a school corporation is authorized to make lease rental obligations under Indiana Code chapter 20-47-2 from the debt service fund. Ind. Code § 20-40-9-8.

The Indiana Constitution also impacts the manner in which a school corporation may spend public money for public work. Indiana has a constitutional debt limit which provides, "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate, exceeding two per centum on the value of the taxable property within such corporation." *See* Ind. Const. Art. 13, § 1. A constitutional debt limit "place[s] constraints on governmental borrowing power to protect present and future taxpayers from the excesses of legislative fiscal irresponsibility." Reuven Mark Bisk, State and Municipal Lease—Purchase Agreements: A Reassessment, 7 Harv. J.L. & Pub. Pol'y, 521 (1984). This means that government entities must struggle both to "fulfill their governmental responsibilities and avoid violating debt limitations." *Id.* "Elected officials across the country have attempted to resolve this conflict through a variety of leasing arrangements, including lease-purchasing." *Id.* Critics of this method, however, contend that:

> [L]ease-purchase agreements [are] a transparent subterfuge of debt limitations. They contend that leasing is in substance no different from constitutionally restricted general obligation debt. Under a broad reading of state constitutional provisions lease-purchasing seems to effectively frustrate the purpose, if not the letter or original scope, of debt limitations. The public, these critics argue, is left saddled with an even greater indebtedness paid for

22

with even higher interest charges. . . .

*Id*. at 522.

The Indiana General Assembly, however, has authorized this alternative means for a school corporation to obtain a renovated building by allowing: (1) school corporations to enter into lease-purchase agreements with public holding companies pursuant to Indiana Code chapter 20-47-2; (2) school corporations to enter into lease-purchase agreements with private holding companies pursuant to Indiana Code chapter 20-47-3; and (3) school corporations to enter into a lease-purchase agreement where the subject property is an existing, improved school building, Indiana Code chapter 20-47-4. Under each chapter, the construction or renovation of the subject property has to be financed and completed by a building corporation, incorporated for that specific purpose. Where the school corporation engages in a lease-purchase of an existing building, under Indiana Code chapter 20-47-4, the school corporation must comply with Indiana Code chapter 20-47-2 or chapter 20-47-3, and if required, comply with certain petition and remonstrance provisions and local public question provisions. Ind. Code § 20-47-4-6(a). Additionally, Indiana Code section 20-47-4-6(c) specifically provides, "Lease rental payments made under the lease do not constitute a debt of the school corporation for purposes of the Constitution of the State of Indiana."

The Indiana General Assembly created a comprehensive statutory scheme that would have allowed School Corporation to renovate Building through the Public Work Statute or acquire the renovated Building through a lease-purchase agreement with a building corporation. Had this been a public work project, the School Corporation would have been

23

required to: prepare general plans and specifications describing the work required; file the plan in a place reasonably accessible to the public; publish notice requesting sealed bids; hold an open meeting to receive the bids; and then either award the bid to the lowest responsible and responsive bidder unless it explains the reason for awarding it to another bidder, or reject all bids. Ind. Code §36-1-12-4. The plans and specifications for the Building would have required approval "by the state department of health, the division of fire and building safety, and other state agencies designated by statute." Ind. Code § 36-1-12-10.

As a lease-purchase agreement, School Corporation would have had to comply with all applicable provisions of Indiana Code chapter 20-47-2. Ind. Code § 20-47-4-8. The renovation of the Building could only have been performed by a building corporation incorporated solely for that purpose—Foundation is not such a building corporation. Ind. Code § 20-47-2-6(a). The building corporation, acting without profit, could have expected only the return of expended capital plus five percent interest. Ind. Code § 20-47-2-6(b). Before School Corporation could execute the lease it would have had to hold a public meeting on the terms of the lease, file a notice of the execution of the lease, and submit the plans and specifications for the improvement for approval by state agencies designated in Indiana Code chapter 20-47-2. Ind. Code § 20-47-4-8. Under a building corporation lease the School Corporation could not have made any lease payments until the renovated property was ready for occupancy. Ind. Code §20-47-2-10. Finally, in anticipation of the renovation, the School Corporation, like here, could have transferred the Building to a building corporation; however, this could have been accomplished only after three appraisers (one of

24

whom is a disinterested freeholder of School Corporation) determine the fair market value of the land. Ind. Code §§ 20-47-2-15, 20-47-4-9. Thereafter, the School Corporation could have sold the land to the building corporation for not less than the amount fixed as the fair market value. *Id.*

In both schemes, the public trust would be protected. Either there is public notice and public bidding for the construction or renovation of school property, or there is an arrangement with an entity incorporated as a building corporation for the purpose of renovating the property and leasing it back. In the former, the public is protected because the school corporation must take the lowest, most responsive bid or explain why it acted otherwise. The project is paid for out of the capital projects fund. In the latter, public input is entertained regarding the fairness of the terms of the lease, the property is built or renovated by a corporation that is operating on a not-for-profit basis, and the school corporation land that is used for the project is transferred to the building corporation at its fair market value. In both cases, the building plans are submitted to the department of health, state fire marshal, and other agencies designated by statute. Ind. Code §§ 20-47-2-8, 36-1-12-10.

While it is the policy of the State of Indiana "to grant to each school corporation all the powers needed for the effective operation of the school corporation," Ind. Code § 20-26-3-1, the General Assembly has specifically stated, "If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a school corporation that exercises the power shall exercise the power in the specified manner as a minimum

25

requirement." Ind. Code § 20-26-3-5(a).  Here, School Corporation and Foundation did not follow either of these integrated legislative schemes.  Instead, they entered into what they contend were six separate transactions to accomplish their goal of renovating the Building with public money, yet evading public scrutiny and input.  School Corporation and Foundation cite to various parts of the Indiana Code to support their contention that each transaction was legal.  The fact remains, however, that, notwithstanding the six contracts, this was one transaction—the renovation of a building owned and paid for by School Corporation using public funds.  This was School Corporation's project and not Foundation's project.  Here, the decision to renovate the Building originated with School Corporation in late 2009.  Hafer was hired by School Corporation and the architectural plans were designed for and overseen by School Corporation.  School Corporation engaged in talks with ICI regarding the cost of the project and did not negotiate the price.  Foundation did not even know about the project until late in 2010.

School Corporation seems to have modeled its transaction after a lease-purchase agreement under Indiana Code chapter 20-47-4.  However, structuring the transaction around Foundation instead of a building corporation, and maintaining that it has entered into an Installment Purchase Agreement instead of a lease-purchase agreement, School Corporation contends it has created a new way to renovate Building that falls outside both the Public Work Statutes and the provisions covering lease purchase agreements.  The problem that arises is that the School Corporation's method of using public funds to accomplish its renovation without complying with public bidding laws has not been authorized by our

26

General Assembly.

The School Corporation's methodology may also fail to protect the public interest. For example, as a lease-purchase transaction, School Corporation could have only transferred the Building to a building corporation for fair market value. Ind. Code §§ 20-47-2-15(3), 20-47-3-13(3). Here, the trial court noted that around the time School Corporation transferred the Building to Foundation for one dollar, it was appraised by Bartlett and Associates, Inc. at $2,300,000. *Appellants' App*. at 20. Prior to the renovation, David Matthews and Associates gave an appraisal that the Building, once renovated, would be worth $7,900,000, while Bartlett gave an appraisal that the Building would be worth $6,500,000. *Id*. The trial court was puzzled about the economic rationale behind renovating the building by this method, noting, "[I]n addition to transferring a $2 million building for one dollar, the School Corporation is expending over $7 million to get a building back worth [$]6.5 million to [$]7.25 million." *Id.*

We are bound to construe legislation in such way as to "oppose prejudice to public interest." *See Bynum*, 259 Ind. at 650, 291 N.E.2d at 356; *Kokomo Tube Co.*, 426 N.E.2d at 1345. That goal would be undermined if we were to dissect the renovation project into six artificial pieces that avoid the scrutiny of public evaluation and the safeguards protecting public money, when the renovation is, in fact, one integrated project. School Corporation accomplished the renovation by (1) hiring Hafer architect who drew up architectural plans to School Corporation's specifications; (2) hiring ICI to do the work; (3) transferring the Building to Foundation for $1; (4) using their own attorney to draft the contract between

27

Foundation and ICI, as well as other documents securing the project's financing such as the Mortgage, Promissory Note, and Assignment; (5) agreeing to buy back the building from Foundation for the exact price and on the same schedule that the Foundation was paying ICI; and (6) supervising the actual construction. *Appellants' App.* at 285, 278, 159, 281-82, 398-415, 398-99. The trial court concluded, and we agree, that School Corporation "selected a contractor to renovate a public building according to plans prepared by an architect selected by the School and fully intended to pay for the project and in fact is paying for the project with public funds, without following the public bidding laws." *Id.* This scheme has not been authorized by our General Assembly and, indeed, violates the public bidding laws that it has enacted. [14]

## B. Antitrust Act

The trial court concluded that there was no violation of the Antitrust Act because it found no violation of the Public Bidding Laws, stating:

> As this Court concludes that for the above reasons the case does not meet the criteria for a Public Lawsuit and finds no violation of the Public Bidding laws under the facts of this case, the Court does not and can not find a scheme, contract or combination to restrain or restrict bidding, as the series of transactions at issue herein were "powers, rights, or privileges now existing or conferred by law upon a person" to-wit the Foundation and the School [Corporation]. Therefore, [Contractors'] Anti-Trust violation claims can not [sic] succeed and summary judgment should be entered in favor of [Foundation and School Corporation].

---

[14] School Corporation and Foundation contend that each of the transactions entered into to accomplish the renovation of the building was legal. Judge Pyle specifically asked the parties at oral argument whether the initial transaction—the transfer of property from School Corporation to Foundation—was a legal transaction. Deciding as we do that School Corporation failed to follow the overarching statutory scheme for renovating Building, we make no decision regarding the question of whether the transfer of property to the Foundation or any of the other alleged separate transactions was in fact legal.

28

*Id*. at 29. Because we hold that the scheme utilized by the School Corporation and the Foundation did, indeed, violate the Public Bidding Laws, we vacate the trial court's judgment and remand for further proceedings consistent with this decision.

Reversed and remanded with instructions.

PYLE, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

ALVA ELECTRIC, et al )
)
    Appellants-Plaintiffs, )
)
        vs. )      No. 82A01-1201-PL-2
)
EVANSVILLE VANDERBURGH SCHOOL )
CORPORATION and EVSC FOUNDATION, INC., )
)
    Appellees - Defendants. )
)

FRIEDLANDER, Judge, dissenting

Because I believe the actions of School Corporation and Foundation were lawful and not subject to competitive bidding procedures, I respectfully dissent.[15]

Contractors do not argue, and the Majority does not conclude, that any individual contract entered into or step taken by School Corporation or Foundation was unlawful. Indeed, at oral argument, counsel for Contractors expressly conceded that each of the six

---

[15] Additionally, I briefly note that I would not be so quick to dismiss Foundation's mootness argument on the basis of the public interest exception. If the facts of this case are as anomalous as Contractors would have us believe, I am uncertain that this case truly presents a matter of great public importance or one that is likely to recur. Moreover, I am troubled by Contractors' request that we "set a precedent concerning whether a school corporation or other municipal corporation can, in the future, use the same method that School Corporation used to renovate the Building." *Slip Op.* at 14. I believe this is tantamount to a request for an advisory opinion, which we ordinarily decline to issue. *See Mosley v. State*, 908 N.E.2d 599 (Ind. 2009).

contracts was legal. Nevertheless, the Majority concludes that "notwithstanding the six contracts, this was one transaction—the renovation of a building owned and paid for by School Corporation using public funds." *Slip Op.* at 26. The Majority's conclusion is based upon School Corporation's heavy involvement in and control over the renovation project from its inception to its completion, and the existence of alternative methods by which School Corporation could have accomplished the renovation which would have required public bidding or compliance with other statutory requirements.

I am unconvinced that the series of concededly lawful transactions at issue in this case adds up to a violation of the Public Bidding Laws or the Antitrust Act. Unlike the Majority, I see nothing "artificial" in viewing each of the contracts as a distinct step, and I do not believe that the mere existence of other methods by which School Corporation could have carried out the renovation without the Foundation's help equates to a mandate that it do so.[16] *Id.* at 27. Rather, for the reasons explained below, I believe that the series of lawful transactions at issue in this case is, when viewed in the aggregate, entirely lawful.

I am of the opinion that this case can be resolved based on the plain language of the relevant statutes. Unless specifically excluded, the Public Work Statute applies to "all public work performed or contracted for by" political subdivisions and their agencies, "regardless of whether it is performed on property owned or leased by the political subdivision or agency." I.C. § 36-1-12-1(a). "Public work" is defined in relevant part as "the construction,

---

[16] I believe that Contractors' and the Majority's reliance on I.C. § 20-26-3-5, which provides that "[i]f there is a constitutional or statutory provision requiring a specific manner for exercising a power, a school corporation that exercises the power shall exercise the power in the specified manner as a minimum requirement" is misplaced. The Majority's analysis in this regard assumes it was School Corporation that carried out the renovation project, which begs the question, in my opinion.

reconstruction, alteration, or renovation of a public building . . . that is paid for out of a public fund or out of a special assessment." I.C. § 36-1-12-2. Thus, to be subject to the competitive bidding procedures set forth in the Public Work Statute, the renovation at issue here must have been performed or contracted for by a political subdivision or its agency and paid for out of a public fund or special assessment. I believe neither of these requirements was satisfied in this case.

Although School Corporation exerted considerable control over the renovation project, Foundation was the only entity that contracted with ICI to carry out the project. It is my belief that the plain language of I.C. § 36-1-12-1(a), which provides that the Public Work Statute applies to public work performed or contracted for *by* a political subdivision or its agency, does not cover contracts entered into by private entities like Foundation—even if those contracts are entered into for the ultimate benefit of and in cooperation with a political subdivision like School Corporation.

Additionally, regardless of its intended use, a project or structure is not subject to the Public Work Statute unless it is paid for out of a public fund or special assessment. This requirement reflects the purpose behind the Public Work Statute, i.e., wise stewardship of public funds. There is no indication that any special assessment was levied in relation to the renovation project; the relevant question is therefore whether the renovation project is being paid for out of a "public fund."

Contractors argue that the renovation project is being paid for out of a public fund because, under the installment purchase agreement, School Corporation makes payments to

32

Foundation in precisely the same amounts and on precisely the same dates as Foundation makes payments to ICI. Put another way, the Contractors assert that the renovation is being paid for out of a public fund because Foundation obtains all of the money it uses to pay ICI from School Corporation, and the transfer of the funds from School Corporation to Foundation does nothing to alter the character of those funds. The Contractors argue that in order to conclude that the renovation project is not being paid for out of a public fund, this court would be required to "overlook the obvious" and "check its common sense at the door." *Reply Brief* at 13. It is telling, however, that Contractors never discuss the statutory definition of "public fund" in their analysis of this issue.

The General Assembly has defined the phrase "public fund" to mean all funds that are:

> (A) derived from the established revenue sources of a political subdivision or an agency of a political subdivision; and
> (B) deposited in a general or special fund of a municipal corporation, or another political subdivision or agency of a political subdivision.

I.C. § 36-1-12-1.2(9). Two general observations can be drawn from this statutory language. First, the definition is written in the conjunctive; both elements must be satisfied for the funds to be considered "public" for the purposes of the statute. Second, the statute's requirement that the funds be "deposited in a general or special fund" of a political subdivision indicates that the origin of the funds is not the only relevant consideration; the funds must also be held by a municipal corporation or political subdivision.

Here, even if it can be said that the funds used to pay for the renovation were "derived" from School Corporation's established revenue sources, those funds are not

"deposited in a general or special fund of a . . . political subdivision." *See* I.C. § 36-1-12-1.2. Once the funds are transferred to Foundation, they are no longer part of a public fund because they are no longer held by a political subdivision. In other words, the public dollar is spent only once—when School Corporation makes payment to Foundation. The interpretation urged by the Contractors, and implicitly accepted by the Majority, effectively reads the second element out of the statute. Perhaps I.C. § 36-1-12-1.2(9) provides a narrow definition of public fund, but it is the definition our General Assembly has prescribed, and we are not at liberty to expand it.

Because I believe that the unambiguous statutory language at issue here precludes us from engaging in statutory construction, I think that discussion of legislative intent and public policy is unnecessary. Nevertheless, in light of Contractors' insistence that a broader construction of the Public Bidding Laws is required in order to effectuate legislative intent and protect the policies behind the laws, I briefly note that there is a countervailing policy at work here that has not been discussed by the parties or the Majority.

Across the state of Indiana, numerous private foundations exist to provide support to public and private educational institutions. These charitable foundations provide educational institutions with a number of resources and, in so doing, aid them in reaching their educational objectives. Such public-private cooperation is nothing new, and it is beneficial to the citizens of Indiana because it enhances the quality of our public educational system while easing the burden on taxpayers. If the General Assembly wished to place the sorts of limitations on public-private cooperation as the Majority's opinion suggests, I believe it

34

would have done so expressly. Moreover, I believe that today's opinion creates uncertainty for private foundations regarding the extent of support they may provide for public educational institutions before becoming subject to Public Bidding Laws. I believe the attendant risk of incurring liability for failure to comply with these laws, which were designed to apply only to public institutions, may significantly chill private educational foundations' willingness to provide resources for the benefit of public educational institutions. For all of these reasons, I disagree with the Majority's holding and would affirm the trial court's order granting summary judgment.