ATTORNEYS FOR APPELLANTS
ALVA ELECTRIC, INC., ET AL.
Jon Laramore
April E. Sellers
Shiv Ghuman O'Neill
Faegre Baker Daniels LLP
Indianapolis, Indiana

A.J. Manion
Manion Stigger
Evansville, Indiana

Tony Wayne Fehrenbacher
Evansville, Indiana

ATTORNEYS FOR APPELLEE
EVSC FOUNDATION, INC.
Richard T. Mullineaux
Crystal G. Rowe
William F. English
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE
EVANSVILLE-VANDERBURGH
SCHOOL CORPORATION
Patrick A. Shoulders
Robert L. Burkhart
Dirck H. Stahl
Ziemer Stayman Weitzel & Shoulders, LLP
Evansville, Indiana



FILED
May 01 2014, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 82S01-1307-PL-473

ALVA ELECTRIC, INC., ARC
CONSTRUCTION CO., INC., DANCO
CONSTRUCTION, INC., DEIG BROS.
LUMBER & CONSTRUCTION CO., INC.,
EMPIRE CONTRACTORS, INC.,
PEYRONNIN CONSTRUCTION CO., INC.,
AND WINK CONSTRUCTION, INC.,

*Appellants (Plaintiffs below),*

v.

EVANSVILLE-VANDERBURGH SCHOOL
CORPORATION AND EVSC
FOUNDATION, INC.

*Appellees (Defendants below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-1102-PL-78
The Honorable Gregory Alan Smith, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 82A01-1201-PL-2

**Rucker, Justice.**

In this case we are asked to decide whether the specific procedure employed by a school corporation to renovate one of its buildings violated Indiana's Public Work Statute and if so, whether certain participants in the renovation violated Indiana's Antitrust Act. We determine that under the facts presented, the Public Work Statute was violated but the Antitrust Act was not.

## Background

Indiana, like other states, has enacted statutes governing the way certain public entities must select contractors for publicly funded construction jobs. These statutes are designed "to safeguard the public against fraud, favoritism, graft, extravagance, improvidence and corruption, and to insure honest competition for the best work or supplies at the lowest reasonable cost." Angel v. Behnke, 337 N.E.2d 503, 509 (Ind. 1975) (quotation omitted). Such statutes generally provide that public construction contracts exceeding certain dollar amounts must be awarded through a public bidding process. One of Indiana's primary competitive bidding statutes, the Public Work Statute, is codified at Indiana Code sections 36-1-12-1 through 21 and provides (with certain exceptions not relevant here) that "all public work performed or contracted for by . . . political subdivisions . . . and . . . their agencies" shall be subject to specific bidding procedures and must comply with numerous regulations and specifications. Ind. Code § 36-1-12-1(a). Contracts for the construction or renovation of school buildings typically must comply with the competitive bidding requirements applicable to public works construction contracts. See Brooks v. Gariup Const. Co., 722 N.E.2d 834, 839 (Ind. Ct. App. 1999), trans. denied; Sch. City of Gary, Ind. v. Cont'l Elec. Co., 273 N.E.2d 293, 296 (Ind. Ct. App. 1971). See also 2008 Ind. Op. Att'y Gen. No. 5 (2008) (citing I.C. §§ 36-1-2-10, -13) (footnote omitted) ("School corporations are political subdivisions for purposes of the public work statute.")

One mechanism for enforcing the Public Work Statute is available through the Public Lawsuit Statute—Indiana Code chapter 34-13-5—which permits "citizens or taxpayers" of a

municipality "to bring an action questioning the validity or construction of any public improvement by the municipality." Shook Heavy & Envtl. Constr. Grp. v. City of Kokomo, 632 N.E.2d 355, 357, 58 (Ind. 1994) (applying predecessor to chapter 34-13-5). In addition Indiana Code section 24-1-2-7—contained in the Indiana Antitrust Act—"confers on private individuals the right to challenge the award of a government contract where the governmental entity and successful bidder have engaged in collusion or fraud." Id. at 358 (citation omitted).

## Facts and Procedural History

Facing a $6.5 million cut in state funding defendant Evansville-Vanderburgh School Corporation ("School Corporation") determined that it could, over time, reduce its operating expenses by consolidating its administrative offices from several buildings into one. To this end School Corporation announced on January 11, 2010 that it intended to convert its former warehouse building (the "Building") into administrative offices. Shortly thereafter School Corporation hired an architectural firm to design plans for the necessary renovation of the Building, and the firm submitted plans to School Corporation around the beginning of June, 2010.

In or around August, 2010 School Corporation determined it "did not have sufficient funds to complete, or publicly bid" the renovations. Br. of Appellee Foundation at 6. The School Corporation further concluded it could not sell bonds and levy a tax increase because it was already at its maximum tax rate. Id. In late October, 2010 School Corporation approached a contractor, Industrial Contractors, Inc. ("ICI") about renovating the Building and accepting payment for the renovations over time. Specifically, School Corporation proposed a plan whereby it would convey the Building to a private non-profit entity and that entity would then contract with ICI for the renovations. See App. at 293. School Corporation identified the EVSC Foundation ("Foundation"), a local public school endowment corporation "formed to provide educational resources . . . to the Evansville Vanderburgh School Corporation," as the entity that would contract with ICI. App. at 293, 707. School Corporation officials selected this arrangement because Foundation was not subject to public bidding laws and therefore the renovation could occur more quickly. See App. at 275, 437-38. Apparently at this point Foundation had not been informed of the arrangement.

3

School Corporation contacted Foundation about the project in December 2010 proposing that Foundation "may be used to help facilitate the remodeling and purchase of the project" because Foundation was "not subject to public [bidding laws]." App. at 437. The essence of the plan was that: (1) School Corporation would convey ownership of the Building to Foundation; (2) Foundation would contract with ICI to execute the renovations as ICI had bid them to School Corporation; (3) Foundation would sell the Building back to School Corporation, accepting installment payments for the "sale" price in the precise amount and on the precise schedule that payments under ICI's construction contract were due; and (4) Foundation would make those payments to ICI. School Corporation, ICI, and Foundation implemented the plan through a series of six contracts among the parties.

In February of 2011, while the renovation was underway, the plaintiffs in this case— several area contracting businesses paying taxes in the school district ("Taxpayers")—filed this action against School Corporation and Foundation (collectively, "Defendants") seeking a declaratory judgment and injunctive relief for Defendants' alleged violation of public bidding statutes. Taxpayers later added a claim alleging Defendants' actions violated Indiana's Antitrust Act. Maintaining that "[b]oth sides agree on all the relevant facts," Taxpayers moved for summary judgment requesting, among other things, the trial court declare "that the project violates public bidding laws," and that "[t]he transaction also violates Indiana's anti-trust law." App. at 122, 134, 147. Taxpayers further asked the trial court to void all the contracts constituting the transaction, to enjoin any further expenditure of public funds on the project, and to commence damages proceedings on the alleged antitrust violation. Defendants responded to Taxpayers' motion and filed their own motion for summary judgment. After a hearing the trial court granted Defendants' motion and denied that of Taxpayers. In so doing the trial court issued findings of fact, conclusions of law, and judgment determining among other things, "there is no doubt that the School [Corporation] engaged in the transactions in part to circumvent the public bidding statutes." App. at 26. However, under its reading of the relevant statutes, the trial court determined the transactions did not constitute a violation.[1] App. at 26. The trial court

---

[1] The trial court's ultimate judgment that the Public Work Statute did not apply to this transaction rested primarily on three conclusions: (1) a private entity—Foundation—was the title holder of the Building at the time of the Building renovations; (2) Foundation was the signatory on the construction agreement with ICI; and (3) payment to ICI, though originating with School Corporation, was made from Foundation's bank account. See App. at 26, 27 (Conclusions of Law 13, 14, 23, 24).

further concluded that in the absence of a violation of the Public Work Statute, Taxpayers' antitrust claims could not succeed. App. at 29.

Taxpayers appealed and in a divided opinion the Court of Appeals concluded the project violated the Public Bidding Laws and therefore reversed the trial court's judgment.[2] See Alva Elec., Inc. v. Evansville Vanderburgh Sch. Corp., 984 N.E.2d 668 (Ind. Ct. App. 2013). Noting that the trial court concluded there was no violation of the Antitrust Act because it found no violation of the Public Bidding Laws, the Court of Appeals remanded this cause for further proceedings. In dissent Judge Friedlander largely agreed with the judgment of the trial court and also expressed concern about the adverse impact the majority opinion might have on the decisions of private foundations to support public schools. See id. at 684-86 (Friedlander, J., dissenting). Defendants sought transfer which we previously granted. See Alva Elec. Inc. v. Evansville Vanderburgh Sch. Corp., 990 N.E.2d 945 (Ind. 2013) (Table).

**Standard of Review**

When reviewing the grant or denial of a motion for summary judgment "we stand in the shoes of the trial court." City of Gary v. Ind. Bell Tel. Co., 732 N.E.2d 149, 153 (Ind. 2000). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "In reviewing cross-motions for summary judgment, we consider each motion separately." Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc., 988 N.E.2d 250, 253 (Ind. 2013). Where, as here, the dispute is one of law rather than fact, our standard of review is de novo. See Spangler v. Bechtel, 958 N.E.2d 458, 461 (Ind. 2011). Further, the trial court in this case entered findings of fact and conclusions of law, "neither of which are required nor prohibited in the summary judgment context." City of Gary, 732 N.E.2d at 153. "Although specific findings aid our review of a summary judgment ruling, they are not binding on this Court." Id. Finally, "we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we

---

[2] As a threshold matter the Court of Appeals addressed Foundation's contention that Taxpayers' claims were moot because the renovation project had been completed and because no effective relief could be granted due to taxpayers' failure to join ICI as a party defendant. The Court disagreed and addressed the parties' contentions on the merits. Foundation again raises its mootness claim on transfer.

5

may affirm a grant of summary judgment upon any theory supported by the evidence." Wagner v. Yates, 912 N.E.2d 805, 811 (Ind. 2009).

**Discussion**

I.    Public Work Statute violation

We summarily affirm that portion of the Court of Appeals' opinion holding that the scheme used by School Corporation and Foundation violated the Public Building Laws.[3]  In so doing, we make the following observations.  We share Judge Friedlander's concern about the potential for such a holding to "create[] uncertainty for private foundations regarding the extent of support they may provide for public educational institutions before becoming subject to Public Bidding Laws."  Alva Electric, Inc., 984 N.E.2d at 686 (Friedlander, J., dissenting).  We want to make clear that the holding in this case should not be construed to mean that all (or even most) contracts entered into by private entities like Foundation "for the ultimate benefit of and in cooperation with a political subdivision like School Corporation" necessarily run afoul of the Public Work Statute.  Id. at 685.  We note here in particular the clear appearance that in all of Foundation's actions related to the project, it was acting *on behalf of* School Corporation.  Though neither the parties nor the Court of Appeals explicitly addressed the possibility that Foundation was acting as an agent[4] for its principal School Corporation throughout the transaction, the Taxpayers' and Court of Appeals focus on "School Corporation's heavy involvement in and control over the renovation project from its inception to its completion," id. at 684, naturally leads in that direction.  "Whether an agency relationship exists is generally a question of fact, but if the evidence is undisputed, summary judgment may be appropriate."  Demming v. Underwood, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011), trans. denied.  The record in this case is not developed as to the elements of an agency relationship so we leave that discussion for another day.

---

[3] We also summarily affirm the Court of Appeals opinion in determining Taxpayers' claims are not moot and determining the Public Lawsuit Statute applies to this case.  See Alva Elec., Inc., 984 N.E.2d at 676-78.

[4] "An agent is one who acts on behalf of some person, with that person's consent and subject to that person's control."  Oil Supply Co., v. Hires Parts Serv., Inc., 726 N.E.2d 246, 248 (Ind. 2000).

II.     Antitrust claim

Taxpayers contend School Corporation and Foundation violated a provision of Indiana's antitrust statute "[b]y working together to evade the public bidding laws on their transaction." Br. of Appellant at 35. In light of its conclusions that the Public Work Statute did not apply to this transaction and that each of the six contracts the parties executed to effectuate the transaction were "entirely legal and authorized by statutes," App. at 26 (Conclusion of Law 11), the trial court determined that Taxpayers' "Anti[t]rust violation claims cannot succeed" and granted Defendants summary judgment on that issue. App. at 29. Reversing the trial court on this issue, the Court of Appeals remanded this cause to the trial court apparently for, among other things, consideration of Taxpayers' antitrust violation claims. Taxpayers expressed at oral argument before this Court that the antitrust issue can be decided on the record before us. See Oral Arg. Tr. at 15:29.[5] We agree; and having determined that the Court of Appeals correctly reversed the trial court and found a violation of the Public Work Statute, we now address Taxpayers' argument that by violating the Public Work Statute, the Defendants' arrangement to renovate Building necessarily constitutes an antitrust violation.

Taxpayers' antitrust claim is grounded in two sections of the Antitrust Act. Indiana Code section 24-1-2-3 provides: "A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a Class A misdemeanor." Indiana Code section 24-1-2-7(a), in turn, provides a private right of action allowing an award of treble damages, costs, and attorney's fees to "[a]ny person whose business or property is injured by a violation of this chapter." In order to establish a violation of the Antitrust Act a private claimant must "prove three essential elements: 1) a violation of the statute, 2) injury to a person's business or property proximately caused by the violation, and 3) actual damages." Thompson v. Vigo Cnty. Bd. of Cnty. Comm'rs, 876 N.E.2d 1150, 1155 (Ind. Ct. App. 2007), trans. denied. Taxpayers assert they have proven the statutory violation by demonstrating facts showing "the School [Corporation] and Foundation . . . reached an agreement for a specific contractor to do the work on the project without any public bidding in

---

[5] Taxpayers also raised and briefed the antitrust issue in the Court of Appeals. See Br. of Appellants at 35-37. Thus, upon our grant of transfer we obtained jurisdiction over all issues raised below. See Ind. Appellate Rule 58(A)(2).

violation of Indiana Code [section] 24-1-2-3." They further aver they were injured—as taxpayers—"because the price for the project was higher than it would have been if it had been bid," and—as potential competitive bidders—by not being awarded the construction contract. Finally, Taxpayers claim they have incurred two sets of damages: first, as taxpayers they indirectly paid "the difference between the $6.5 million that [ICI] was awarded and what the lowest bidding contractor would have been awarded," and second, as potential bidding contractors they "lost the profits they would have earned had they been awarded the contract for the project." Br. of Appellants at 36, 37. Defendants make three arguments in response, one of which we find dispositive. That is, Defendants contend Taxpayers have provided no evidence they have been injured as contemplated in section 7.[6] We agree.

Taxpayers bring this suit under the statutory section providing a cause of action to "[a]ny person whose business or property is injured by a violation of this chapter." I.C. § 24-1-2-7(a). To prevail a private plaintiff must demonstrate among other things "injury to a person's business . . . proximately caused by the violation." Thompson, 876 N.E.2d at 1155. As our courts have long recognized, the Antitrust Act's purpose is to "prevent fraud and collusion in the letting of contracts and to protect trade and commerce against unlawful restraints and monopolies." City of Auburn v. Mavis, 468 N.E.2d 584, 586 (Ind. Ct. App. 1984) (quoting Royer v. State ex rel. Brown, 112 N.E. 122, 124 (Ind. Ct. App. 1916)). And thus the required injury under section 7 is:

> [I]njury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations . . . would be likely to cause.

Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) (internal quotation omitted)).

---

[6] Because this contention is dispositive we do not address Defendants' contentions that (1) the language of Indiana Code section 24-1-2-1 exempts them from the reach of the Antitrust Act because each of the six contracts the parties executed here was lawful in isolation; and (2) because School Corporation cannot as a matter of law violate Indiana Code section 24-1-2-3, Foundation cannot have "engaged" with School Corporation to violate the statute.

Taxpayers contend their injuries consist of: (1) the supposed higher price for the Building renovation than it would have been if the project had been publicly bid, and (2) the loss of a contract which would have ultimately been awarded to one of them. But Taxpayers designate no evidence to support a conclusion that these injuries in fact occurred. They provide no estimate of what the project would have cost if bid publicly, and they provide no evidence from which we can infer that any one of them would have provided the "winning" bid. To the extent Taxpayers allege the elimination of public bidding constituted a generalized injury to competition, their reliance on the U.S. Supreme Court's opinion in National Society of Professional Engineers v. United States is misplaced. In that case the Supreme Court determined that an agreement restricting competitive bidding constituted a *violation* of the Sherman Antitrust Act because of its clearly anticompetitive character. See 435 U.S. 679, 692-93 (1978). But in that case no determination of specific injury or damages was made or required; the relief sought by the government was an injunction prohibiting enforcement of the agreement. Further, Indiana precedent reflects that when an antitrust action is brought privately actual injury to the plaintiff must be demonstrated. Compare, e.g., Thompson, 876 N.E.2d at 1155 (affirming trial court's motion to dismiss a claim brought under section 24-1-2-7 where plaintiff failed to demonstrate that but for the antitrust violation he would have received the contract) with Royer, 112 N.E. at 125 (affirming injunction prohibiting enforcement of contract obtained after collusion among bidders where action was brought by the State on relation of a taxpayer pursuant to what is now section 24-1-2-5 and remedy was granted not for injury to "the private rights or interest of such taxpayer" but to "secure or protect the interests of the public").

We agree with Taxpayers it is hornbook antitrust law that under an "agreement eliminating competitive bidding . . . a seller *will be able to* charge a higher price than under conditions of perfect competition." Appellant's Br. at 36 (quoting XII Philip Areeda, et al., Antitrust Law § 2022e (2d ed. 2005) (emphasis added)). But Taxpayers provide no evidence that is what happened here. And without evidence of injury, Taxpayers are not entitled to relief. Cf. Thompson, 876 N.E.2d at 1156 (affirming dismissal where plaintiff could not prove one of the three essential elements of his claim under section 24-1-2-7).

III.    Remedy

In their complaint, Taxpayers requested several forms of relief.  See App. at 55.  At Oral Argument before this Court, however, Taxpayers restricted their requests to two:  (1) A declaration that the Building renovation transaction violated the Public Work Statute, and (2) An award of nominal damages, costs, and attorney's fees for the alleged antitrust violation.  See Oral Arg. Video Tr. at 43:38-43:53.  As discussed above, Taxpayers have failed to present evidence of antitrust injury and therefore their antitrust claim fails.  No award of damages, costs, or attorney's fees is possible on this claim.  But we did summarily affirm the Court of Appeals' holding that the Building renovation was accomplished in violation of the Public Work Statute, Indiana Code chapter 36-1-12.  Thus, a declaration to that effect is appropriate.[7]

**Conclusion**

We affirm the trial court's grant of summary judgment in favor of Defendants on Taxpayer's antitrust claim.  By summarily affirming the Court of Appeals holding on the public bidding violation, we reverse the trial court's grant of summary judgment in favor of Defendants on that issue.  We remand with instructions for entry of summary judgment in favor of Taxpayers, as well as a declaration that the transactions effected by School Corporation violated Indiana's Public Work Statute.

Dickson, C.J., and David, Massa and Rush, JJ., concur.

---

[7] Where such violation occurs, by operation of law the contracts involved are void.  See I.C. 36-1-12-16 ("A contract for public work by a political subdivision or agency is void if it is not let in accordance with this chapter.").  This is of little moment here, however, as most of the contracts have been fully performed and Taxpayers expressed at Oral Argument they have no intention of upsetting the transaction at this point.  See Oral Arg. Video Tr. at 44:00-44:45.  Taxpayers have thus abandoned their request for an injunction against any further expenditure of public funds on the project.