## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2015, 7:05 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Stuart T. Bench
Bench Law Office
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Patrick J. Kilburn
Lloyd & McDaniel, PLC
Louisville, Kentucky

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Kathryn Jo Gillette a/k/a,
Kathy Gillette,

*Appellant,*

v.

Belterra Resort Indiana, LLC,
d/b/a Belterra Casino Resort, et
al,

*Appellee.*

August 11, 2015

Court of Appeals Cause No.
78A01-1411-CC-477

Appeal from the Switzerland Circuit
Court
Cause No. 78C01-1211-CC-437

The Honorable Gregory Coy, Judge

**Barnes, Judge.**

## Case Summary

Kathryn Gillette appeals the trial court's grant of a motion for summary judgment in favor of Belterra Resort Indiana, LLC, d/b/a Belterra Casino Resort ("Belterra"). We affirm.

## Issue

Gillette raises one issue, which we restate as whether the trial court properly granted Belterra's motion for summary judgment.

## Facts

In 2012, Gillette applied for credit with Belterra, a casino. Pursuant to the credit application, Belterra issued an $8,000.00 "marker", which Gillette used to gamble at the casino. Gillette failed to repay the marker, and Belterra filed a complaint, suing on the account. Belterra requested treble damages pursuant to Indiana Code Section 34-24-3-1.

In July 2014, Belterra filed a motion for summary judgment arguing that there are no genuine issues of material fact regarding Gillette's failure to pay the balance due on the account. In response, Gillette argued that there were genuine issues of material fact regarding her mental capacity to enter into a contract and that, if a valid contract was formed, Belterra was not entitled to treble damages.

In support of her argument, Gillette designated her own affidavit explaining that in 2000, she was diagnosed with restless leg syndrome and prescribed .25

milligrams of Mirapex once per day. In 2009, the dosage of Mirapex was increased until she was taking .75 milligrams two to three times per day as needed. She stated that prior to the increase of medication she had never gambled and that shortly after the dosage was increased she went to a casino "and once [she] started gambling, could not stop." Appellant's App. p. 68. She said her gambling continued until 2013, when she was in financial ruins after having withdrawn over $100,000.00 from an IRA, losing investment properties, and using her husband's credit card without his knowledge to charge over $63,000.00. She described herself as "a compulsive, pathological gambler." *Id.* She explained that she had balances due at eight casinos in southern Indiana.

[6]     In her affidavit, Gillette described her metal state:

> 12.     . . . . During this time I continued to bet all money that I could, borrow, or in effect take money from my Husband without his knowledge, cash in individual retirement accounts, and other accounts in order to continue gambling. I did not have the ability to make a proper decision to quit, nor the ability to knowingly, or intentionally sign documents for additional sums. I do not believe my mental capacity was such, that I could have refused the acceptance of any money or sums, or not had the ability to obtain what money I could to continue my gambling problem. . . .

*Id.* at 70. She stated she "was not in a correct frame of mind to make a knowledgeable, and voluntary decision to borrow this money . . . ." *Id.* Gillette explained that she was never informed that one of the side effects of Mirapex is compulsive gambling, which occurs in one out of every seven people who take the drug. She also explained that, since her dosage was reduced, she has not gambled at all.

Regarding the marker and Belterra's attempt to withdraw funds from her bank account, Gillette acknowledged that Belterra had previously extended credit to her in the form of markers, which she had repaid. Gillette also stated:

> 8. . . . . I do believe that I executed a document stating that I would repay, and that Belterra could withdraw that sum from my checking account at Huntington Bank. It was also my understanding that I would specifically be provided notice as to when the amount was due, and when they would be forwarding documentation to Huntington Bank so that the money would be available, or I could pay the marker off ahead of time. . . .
>
> 9. I never received notice that the payment was in fact "due", and to the best of my knowledge, less than thirty (30) days had passed when Belterra Casinos attempted to withdraw that sum of money from my account. At the time of their request for withdraw, there was not sufficient funds in the account. Had I been notified that the request was going to be made, sufficient funds would have been made available, and the marker would have been paid as it had been in the past.
>
> Upon learning that this "transaction" had not been honored, I went to the Belterra Casino, went to the cashier's office and provided to them the sum of [$8,000.00] in cash, to pay off the balance that was "owed". This money was accepted by the cashier. I waited, and a few minutes later the cashier advised me that they would not be able to accept that payment as a reimbursement for the transaction, due to the fact that they had not received all of the information as to any bank non-payment fees, other fees, or charges as a result of there not being sufficient funds in the bank to cover the transaction. I then asked if they could issue me another marker for [$8,000.00], the cashier gave me back my [$8,000.00], and said that she would consider that as a trade on a marker, and that I would be notified of any additional fees. My belief, and understanding was the marker had been paid off, but that I could be responsible for additional bank fees. . . .
>
> 10. . . . . At the time this marker was taken out, I was still a compulsive gambler, and had planned on repaying that marker when I took the [$8,000.00] in. When they said it would be considered a new

loan, I took my money back, and spent all of it in the casino at that time. . . .

*Id.* at 68-69.

[8] On October 17, 2014, the trial court granted Belterra's motion for summary judgment after concluding that Gillette's response did not raise a genuine issue of material fact. The trial court, however, concluded that Belterra was not entitled to treble damages because there was no fraud or other legal basis for awarding treble damages. Thus, the trial court entered judgment for Belterra in the amount of $8,000.00, plus attorney fees pursuant to the terms of the credit application, costs, and interest. Gillette now appeals.

# Analysis

[9] Gillette argues that the grant of summary judgment in favor of Belterra was improper because there are genuine issues of material fact for trial. "We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." *Perdue v. Gargano*, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. *Id.* (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence designated by the parties are construed in a light most favorable to the non-moving party. *Id.*

[10] Here, pursuant to Gillette's request, the trial court issued findings of fact and conclusions of law. However, a trial court's entry of findings and conclusions is neither required nor prohibited in the summary judgment context. *Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014). Although specific findings aid our review of a summary judgment ruling, they are not binding on us. *Id.* Thus, we owe no deference to the trial court's findings and conclusions. *See id.*

[11] On appeal, Gillette argues there are genuine issues of fact regarding whether she had the mental capacity to contract with Belterra, whether she received notice from Belterra before it attempted to withdraw funds from her bank account, whether the $8,000.00 she took to Belterra was used to repay the marker and a new marker was issued, whether she signed a post-dated check, and whether she was required to repay the marker by a specific date. However, in response to Belterra's motion for summary judgment, aside from a long list of purported questions of material fact, Gillette specifically argued only that she lacked the mental capacity to form a contract and that Belterra was not entitled to treble damages.[1]

[12] Because the trial court did not award Belterra treble damages and Belterra does not challenge that decision, we need not address the issues raised by Gillette as they relate to an award of treble damages. To the extent the issues raised by

---

[1] The bulk of Gillette's memorandum in opposition to summary judgment focused on the award of treble damages.

Gillette are new challenges to the grant of summary judgment, a party may not raise a new argument for the first time on appeal, even in an appeal from a summary judgment. *Smith v. Taulman*, 20 N.E.3d 555, 571 (Ind. Ct. App. 2014). Thus, the only properly preserved issue is whether there is a genuine issue of material fact regarding Gillette's mental capacity.[2]

[13]  Relying on *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014), Gillette contends her affidavit was sufficient to create a genuine issue of material fact for trial regarding her mental capacity. In *Hughley*, our supreme court reversed a grant of summary judgment where, in response to a motion for summary judgment, a defendant designated "a perfunctory and self-serving" affidavit to rebut the plaintiff's prima facie case. *Hughley*, 15 N.E.3d at 1004. The *Hughley* court held that the affidavit was minimally sufficient to raise a factual issue to be resolved at trial, thereby defeating the motion for summary judgment. *Id.*

[14]  Mindful of *Hughley*, we nevertheless conclude that Gillette's affidavit was not sufficient to defeat Belterra's motion for summary judgment. "The test for determining a person's mental capacity to contract is whether the person was able to understand in a reasonable manner the nature and effect of his act." *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Indiana, Inc.*, 832 N.E.2d 559, 562 (Ind.

---

[2] Even if the remaining issues were properly preserved, they would be waived because they are not supported by cogent reasoning and citation to appropriate legal authority as required by Indiana Appellate Rule 46(A)(8)(a). *See Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

Ct. App. 2005). To avoid a contract, the party must not only have been of unsound mind, but also must have had no reasonable understanding of the contract's terms due to his or her instability. *Id.*

[15] Although Gillette's affidavit may have created a question of fact regarding her soundness of mind while taking the increased dose of Mirapex, her affidavit did not create a question of fact regarding whether she had no reasonable understanding of the contract's terms. To the contrary, Gillette's affidavit establishes she understood the terms of the contract to the extent that she was taking out a loan for $8,000.00 and was required to repay the loan and that she had repaid the loans in the past. In fact, she even went to Belterra to repay the loan but was unable to do so because of a problem with the paperwork. Thus, Gillette's affidavit establishes that she reasonably understood the terms of her contract with Belterra.

[16] As such, even if there is a question of fact regarding Gillette's soundness of mind following the increased dosage of Mirapex, she has not designated evidence showing she had no reasonable understanding of the contract's terms, which is necessary to the avoid her contract with Belterra. *See Wilcox*, 832 N.E.2d at 562. Thus, Gillette has not shown that there is a genuine issue of material fact for trial regarding her mental capacity. *See Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind. 2003) (holding that, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper

where there is no dispute or conflict regarding a fact that is dispositive of the claim).[3] The trial court's grant of summary judgment was proper.

# Conclusion

[17] Because Gillette did not designate evidence showing that there are genuine issues of material fact for trial, the trial court properly granted Belterra's motion for summary judgment. We affirm.

[18] Affirmed.

Riley, J., and Bailey, J., concur.

---

[3] Gillette also argues that there is no accounting for the denial of an earlier motion for summary judgment filed by Belterra and the grant of this motion for summary judgment. Even if we were bound by the trial court's reasons for denying the earlier motion for summary judgment, the evidence designated by Belterra in support of its motions and Gillette's responses to the two motions differed significantly from motion to motion.