

**FILED**

Oct 15 2015, 7:39 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANT PRO SE | ATTORNEYS FOR APPELLEES |
| Robert Hicks<br>Michigan City, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Aaron T. Craft<br>Deputy Attorney General<br>Indianapolis, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Hicks,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>Marion Thatcher, in his official capacity as Unit Team Manager, and the Indiana Department of Correction,<br><br>*Appellees-Plaintiffs.* | October 15, 2015<br><br>Court of Appeals Case No.<br>49A02-1502-PL-92<br><br>Appeal from the Marion Superior Court.<br>The Honorable John F. Hanley, Judge.<br>Cause No. 49D11-1408-PL-26015 |

**Darden, Senior Judge**

## Statement of the Case

[1] Robert Hicks appeals the trial court's grant of summary judgment in favor of Marion Thatcher, in his official capacity as Unit Team Manager, and the Indiana Department of Correction (DOC). We affirm.

## Issue

Hicks presents one issue for our review, which we restate as: whether the trial court erred by granting the Appellees' cross-motion for summary judgment and denying Hicks' motion for summary judgment.

## Facts and Procedural History

Hicks is an inmate at the Indiana State Prison (ISP) in Michigan City. Within the ISP, there is an Honor Unit. Inmates may apply to be in the Honor Unit if they meet certain requirements such as incident-free status and no serious escape history. The Honor Unit is housed in a separate area of the prison and inmates who are admitted into the unit are given certain privileges that are not available to inmates of the general population. These privileges include the opportunity to purchase an Xbox 360 gaming system and games, access to weight equipment, more time outside their cells, and more frequent visitations.

In August 2014, Hicks filed a complaint for declaratory and injunctive relief claiming age discrimination. The basis of his claim was that the Honor Unit at ISP required applicants to be at least thirty-five years old in order to be considered for placement in the unit. At the time he filed his complaint, Hicks was over the age of thirty but not yet thirty-five.

In response to Hicks' complaint, the Appellees filed a motion to dismiss in October 2014, alleging that Hicks lacked standing to bring his claim. In requesting dismissal, the Appellees noted the ISP had lowered the minimum

age requirement for the Honor Unit to thirty years of age on March 5, 2014, prior to the filing of Hicks' complaint in August 2014.

[6] On November 14, 2014, Hicks filed a motion for summary judgment and response to the Appellees' motion to dismiss. In this combination motion, Hicks conceded that the age requirement for the Honor Unit was lowered to thirty years of age but continued to maintain his age discrimination claim because he said he had been discriminated against in the past and because "[t]hey are still discriminating, only now with a different age group." Appellant's App. p. 37 n.1. Hicks also included in his motion a discussion of his desire to obtain the same privileges enjoyed by the inmates of the Honor Unit.

[7] The Appellees filed their response to Hicks' motion for summary judgment and their own cross-motion for summary judgment on December 18, 2014. The Appellees argued that Hicks lacked standing to bring an equal protection claim based on age discrimination when the alleged age discrimination no longer applies to him. Additionally, the Appellees stated that Hicks' equal protection right is not violated by the fact that inmates of the Honor Unit enjoy certain privileges that he, as a general population inmate, does not. With its motion, the Appellees designated certain evidence, including ISP documents outlining the program and its purpose as well as supporting affidavits. On January 9, 2015, Hicks filed his response to the Appellees' cross-motion for summary judgment.

[8] On January 12, 2015, the trial court held a hearing on the parties' motions for summary judgment. At the hearing, Hicks clarified that he is no longer seeking entry into the Honor Unit. Rather, he is seeking the same privileges that are attendant to residing in the Honor Unit. *See* Tr. p. 6. The trial court took the matter under advisement and, on January 23, 2015, the court denied Hicks' motion for summary judgment and granted the Appellees' cross-motion for summary judgment. On the same day, the trial judge signed the order of summary judgment containing findings of fact and conclusions of law.

## Discussion and Decision

[9] On appeal from a grant or denial of summary judgment, our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Winchell v. Guy*, 857 N.E.2d 1024, 1026 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 56(C). Appellate review of a summary judgment motion is limited to those materials specifically designated to the trial court. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind. Ct. App. 2006), *trans. denied*. All facts and reasonable inferences drawn therefrom are construed in favor of the non-movant. *Id.* The party appealing the judgment carries the burden of persuading the appellate court that the trial court's decision was erroneous. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). Although specific findings may aid our review of a summary judgment ruling, they are not binding on this Court, *Alva Electric, Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014), and we may affirm a grant of summary judgment upon any basis

supported by the evidence. *Pfenning v. Lineman*, 947 N.E.2d 392, 408-09 (Ind. 2011). Moreover, "[t]he fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Pond*, 845 N.E.2d at 1053.

[10]   In his brief to this Court, Hicks contends that inmates in the general population of ISP are treated differently from inmates in the Honor Unit in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The crux of Hicks' argument is that he wants to have all the same privileges that are reserved for those offenders in the Honor Unit, specifically more time out of his cell each day, weekly visits, access to more microwaves and additional time throughout the day to use them, the use of weight equipment, and the opportunity to buy and use an Xbox gaming system.

[11]   The guarantee of equal protection prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. When addressing a federal equal protection claim, we must first determine the applicable level of scrutiny. *Hawkins v. State*, 973 N.E.2d 619, 622 (Ind. Ct. App. 2012). The level of scrutiny to be applied in a particular case depends upon whether the classification involves either a suspect class or a fundamental right. *Cohn v. Strawhorn*, 721 N.E.2d 342, 350 (Ind. Ct. App. 1999). Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis test. *Hawkins*, 973 N.E.2d at 622. Both parties here agree that Hicks is not a member of a suspect class and that the violation

alleged does not constitute an infringement of a fundamental right; thus, we apply the rational basis test. In applying this test, we consider whether the government's action is rationally related to a legitimate governmental purpose. *Id.*

[12] In the prison context, the Equal Protection Clause requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). To demonstrate an equal protection violation, a plaintiff must establish intentional or purposeful discrimination. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). Intentional discrimination implies more than mere awareness of the consequences; rather, it implies "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.*

[13] Here, Hicks filed his motion for summary judgment and then later filed his response to the Appellees' cross-motion for summary judgment and included his own affidavit. The Appellees' designation of evidence includes several supporting affidavits and ISP documents outlining the Honor Unit program and its purposes. Hicks' affidavit merely states that his 2013 application to the Honor Unit was denied because at that time he did not meet the minimum age requirement, that besides the Honor Unit privileges there are no incentives for him to behave, and that he has knowledge of sex offenders who are participants in the Honor Unit. Appellant's App. p. 93.

[14] The Honor Unit program is open to any inmate who qualifies for it. Appellees' designated materials reveal the following specific facts. The qualifying criteria for placement in the Honor Unit at ISP include that the offender: (1) must be at least 30 years of age; (2) must have a minimum of two years at ISP; (3) must be in credit class 1 at the time of admittance and maintain that classification; (4) must currently be assigned to a job or program and maintain an average or better evaluation; (5) must be clear of conduct involving weapons and/or bodily injury for 48 months and any conduct reports for 24 months; (6) must not be an active member of a security threat group; (7) must have a medical code of "A" or "G"; (8) must be free of any on-going investigations; (9) must meet all double celling criteria; and (10) must not have a serious escape history. ISP Facility Directive March 5, 2014, Appellees' App. pp. 24-25. Some of the privileges associated with living in the Honor Unit are listed as: (1) the ability to purchase an Xbox 360 and games for personal use in the inmate's cell; (2) the use of weight equipment; (3) cell doors remain open between the 5:30 p.m. and 9:00 p.m. counts to allow inmates use of the weight equipment; and (4) extra visits (i.e., visits every seven days). *Id.* at 25-26.

[15] The DOC in general, and ISP in particular, have a legitimate governmental obligation to preserve the security of its facility and the safety of both its inmates and staff; however, inmate assaults are a threat to this delicate balance. Affidavit of Danny McBride (Assistant Superintendent of Re-entry at ISP), Appellees' App. p. 18. Therefore, in order to preserve the safety and security of ISP, its staff, and its inmate population, it has implemented and maintained

several programs, including the Honor Unit. *Id.* at 19. Statistics show that offenders under the age of thirty violate prison rules at a rate more than twice that of offenders over the age of thirty in every category except that of the least serious violations. Affidavit of Aaron Garner (Executive Director of Research and Technology at DOC), Appellees' App p. 21. In support of his affidavit, Garner included a chart showing a statistical analysis depicting the number and seriousness of institutional violations and classifications of the age group committing said violations. The chart reflects the rate, per 100 offenders, of guilty conduct violations between January 1, 2013 and December 15, 2014 committed by offenders currently incarcerated at ISP.

| VIOLATION LEVEL | 30 YEARS OF AGE AND OLDER | UNDER 30 YEARS OF AGE |
|---|---|---|
| A | 21.4 | 44.1 |
| B | 110 | 240.8 |
| C | 152.5 | 338.3 |
| D | 3.6 | 4.2 |
| TOTAL | 287.5 | 627.4 |

Ex. 1 to Garner Affidavit, Appellees' App. p. 23. Due to these statistics reflecting the elevated predisposition to violent behavior of younger inmates, the diminished maturity of younger inmates, and the limited space in the Honor Unit, ISP has imposed an age restriction on acceptance into the unit. McBride Affidavit, Appellees' App. p. 19.

[16] The purpose of the Honor Unit program is to incentivize and reward good behavior for offenders who are mature, have demonstrated good behavior, and are employed. To this end, the offenders in the unit are allowed certain privileges. *Id.* Thus, the program has served as an incentive to promote good behavior, particularly among long-term offenders for whom credit time and other rewards might not be as effective. *Id.* The offenders in the program also serve as role models of good behavior for other inmates. *Id.* These goals are borne out in the statistics of ISP showing that between January 1, 2013 and December 12, 2014 when other inmates at ISP committed 205 assaults on fellow inmates and staff, there were no recorded assaults in the Honor Unit. *Id.* at 18, 19.

[17] The Appellees have established that the disparate treatment complained of by Hicks bears a rational relation to a legitimate penological interest. As a whole, prison security is a primary, legitimate governmental interest that is influenced by things such as fostering responsibility and good behavior in inmates and using inmates as role models for other inmates. Conversely, Hicks has failed to demonstrate discrimination that was instituted for the purpose of causing adverse effects on the general population of inmates at ISP. The opposite is

true; the Honor Unit at ISP, with its attendant privileges, was created to have positive effects on the behavior of the general population. As a panel of this Court previously noted, inmates do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *Faver v. Bayh*, 689 N.E.2d 727, 730 (Ind. Ct. App. 1997). However, incarceration does bring about the necessary withdrawal or limitation of many privileges and rights, which is justified by the considerations underlying our penal system, including deterrence of crime, rehabilitation of inmates, and institutional safety and security. *Id.*

# Conclusion

[18] For the reasons stated, we conclude that the trial court did not err in granting the Appellees' cross-motion for summary judgment and in denying Hicks' motion for summary judgment.

[19] Affirmed.

[20] Robb, J., and Pyle, J., concur.