## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2018, 5:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Darren A. Craig
Michele Lorbieski Anderson
Frost Brown Todd, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Libby Yin Goodknight
Kay Dee Baird
C. Daniel Motsinger
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LaPlace Indiana, LLC, Plaza Properties Inc., and L.G.R. Realty Inc.,

*Appellants-Defendants,*

v.

Lakeland West Capital XXIV, LLC,

*Appellee-Plaintiff*.

February 5, 2018

Court of Appeals Case No. 49A02-1612-MF-02902

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Judge

Trial Court Cause No. 49D01-1511-MF-37130

**Mathias, Judge.**

[1] LaPlace Indiana, LLC, Plaza Properties, Inc., and L.G.R. Realty, Inc. (collectively "the Defendants") appeal the trial court's grant of partial summary

judgment to Lakeland West Capital XXIV, LLC ("Lakeland") awarding Lakeland a judgment on Count I to enforce its loan obligations under the Note, and Count III, seeking foreclosure on the assignment that gave LaPlace a revocable, limited license to collect and receive rents on the mortgaged property. The Defendants argue that the trial court erred when it entered a money judgment against LaPlace because the terms of the Note did not permit the lender to seek a deficiency judgment against LaPlace. And, the Defendants argue that the trial court erred when it concluded that after LaPlace defaulted on its loan obligations, Lakeland's interest in the rents collected on the mortgaged properties was superior to Plaza Properties and L.G.R. Realty's claim to management fees and leasing commissions.

[2] Concluding that the trial court properly entered summary judgment in favor of Lakeland, we affirm.

## Facts and Procedural History

[3] On December 3, 2004, LaPlace and Lakeland[1] executed a Note in the principal amount of $15,000,000 and an accompanying mortgage agreement concerning four parcels of commercial real estate located in Indianapolis and Clarksville, Indiana. LaPlace agreed to make monthly payments on the first day of each month up to and including December 1, 2014. The outstanding principal

---

[1] Lakeland was not the original lender. The note, mortgage and assignment were sold or transferred to various entities, until they were purchased by Lakeland in July 2015.

balance of the note and all accrued but unpaid interest was due and payable on January 1, 2015. The terms of the note and mortgage defined an event of default as "failure to make payment of (1) interest or principal on the Note within five (5) days after the same is due, or (2) the entire Debt on or before the Maturity Date [of the Note]." Appellants' App. Vol. II, p. 139.

[4] Also, on December 3, 2004, LaPlace and Lakeland executed an "Assignment of Leases and Rents" for the four commercial properties subject to the mortgage. Under the assignment, Lakeland granted to LaPlace "a revocable, limited license, subject to its revocation, termination and the other applicable terms and provisions of this Assignment, to exercise and enjoy all incidences of the status of a lessor" of the mortgaged property, including the right to collect rent on the mortgage property. Appellants' App. Vol. III, p. 30. However, in the event of a default, LaPlace's right to collect and receive rent on the mortgaged property "shall automatically terminate and be revoked," and Lakeland "shall immediately and without notice, . . . be entitled, whether or not [Lakeland] enters upon or takes control of the Mortgaged Property, to collect and possess the Rents and sums due under any Lease Guaranties." *Id.* Pursuant to both the assignment and the mortgage, LaPlace agreed to apply any rents collected to pay the mortgage before allocating the collected rents to pay expenses associated with managing and leasing the mortgaged properties.

[5] Plaza Properties managed the mortgaged properties for LaPlace and entered into management agreements with LaPlace on the same date the Note,

mortgage, and assignment of leases were executed.[2] The management agreement provided that Plaza Properties's management fees were calculated as a percentage of the rents collected on the mortgaged properties. The agreement also stated that Plaza Properties's rights and interests under the Management Agreement were "in all respects subordinate and inferior to the liens and security interests created or to be created for the benefit of [Lakeland], its successors and assigns, and securing the repayment of the Note including, without limitation, those created under the Mortgage covering, among other things," the mortgaged properties. Appellants' App. Vol. IV, p. 167.

[6] Eventually, Plaza Properties hired L.G.R. Realty to assist in managing and leasing the four mortgaged properties as a real estate broker pursuant to a leasing contract. Plaza Properties signed the agreement on behalf of LaPlace. The leasing agreement stated that L.G.R. would receive commissions based on a percentage of net rent due from tenants who signed leases for the mortgaged properties.

[7] LaPlace failed to pay the principal and accrued interest when the note matured on January 1, 2015. On November 6, 2015, Lakeland filed a complaint seeking to enforce the note and foreclose on the four mortgaged properties. In the complaint, Lakeland alleged that LaPlace's default terminated LaPlace's limited license under the assignment, and Lakeland's interest in any rents

---

[2] The management agreement was signed by the same individual for both LaPlace and Plaza Properties, and that individual was the president of both companies.

collected on the mortgaged properties was superior to the interest that LaPlace, Plaza Properties, and L.G.R. Realty had in the rents. In Count V of the complaint, Lakeland claimed that LaPlace committed conversion after defaulting on the note because LaPlace collected rents to pay management fees to Plaza Properties and leasing commissions to L.G.R. Realty instead of applying the rents to the outstanding indebtedness under the Note. Finally, Lakeland requested a receiver, and the trial court appointed a receiver over the mortgaged properties on January 8, 2016.

[8] Summary judgment proceedings ensued, and both Lakeland and the Defendants filed motions for partial summary judgment. The Defendants admitted that LaPlace defaulted on its obligations under the Note and did not contest foreclosure of the mortgage under Count II of the complaint. However, LaPlace argued that it was entitled to summary judgment on Count I of the complaint, which sought to enforce the Note with a monetary judgment. LaPlace argued that Lakeland could only secure the debt for repayment of the loan by foreclosing on the mortgaged properties. Plaza Properties and L.G.R. Realty argued that they were entitled to retain the fees and commissions they collected on the mortgaged properties after LaPlace defaulted.

[9] The trial court held a hearing on the parties' summary judgment motions and on October 28, 2016, issued an order granting Lakeland's motion for partial summary judgment on Counts I, II, and III of the complaint. Likewise, the court denied the Defendants' cross motion for partial summary judgment on

those counts.[3] The court entered a judgment in favor of Lakeland "with regards to the Note" in the amount of $13,231,257.68 plus interest. Appellants' App. Vol. II, p. 36. The judgment also foreclosed the "liens and security interests of the Mortgage in favor of Lakeland" and directed "the sale of the Mortgaged Property." *Id.* at 37. The court's order also stated that Lakeland "can only foreclose upon the property and use the judgment [against LaPlace] toward a credit bid at the auction. [Lakeland] is not allowed to seek a further deficiency against Defendants following the auction of the property." *Id.* at 31–32. Finally, the court entered judgment in Lakeland's favor, foreclosing on the assignment, and declared that Lakeland's rights and interests to the rents were superior to any right that LaPlace may have had to rents under the assignment and any rights Plaza Properties and L.G.R. Realty may have to a percentage of the rents by virtue of the management and leasing agreements.

[10] On November 29, 2016, the trial court amended its order to make it a final, appealable judgment as to Counts I, II, and III of Lakeland's complaint. The Defendants appeal the court's judgment on Count I (the money judgment against LaPlace) and Count III (foreclosing on the assignment). The Defendants do not challenge the trial court's judgment on Count II, which foreclosed the mortgage and directed the sale of the mortgaged properties.

---

[3] The Defendants filed a motion for summary judgment on Lakeland's conversion claim, which the trial court also denied. That ruling is not at issue in this appeal.

# Standard of Review

[11]   Our standard of review of summary judgments is well-settled. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citing Ind. Trial Rule 56(C)). We review the grant or denial of a summary judgment motion de novo. *Layne v. Layne*, 77 N.E.3d 1254, 1264 (Ind. Ct. App. 2017), *trans. denied*. The filing of cross motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Roberts v. Henson*, 72 N.E.3d 1019, 1026 (Ind. Ct. App. 2017). We may affirm a grant of summary judgment on any theory supported by the designated evidence. *Alva Elec.*, 7 N.E.3d at 267.

[12]   This appeal requires the interpretation of a contract. Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). Therefore, cases involving contract interpretation are particularly appropriate for summary judgment. *Id*.

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If,

on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence[,] and its construction is a matter for the fact-finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless.

*T-3 Martinsville, LLC v. U.S. Holding, LLC*, 911 N.E.2d 100, 111 (Ind. Ct. App. 2009), *clarified on reh'g*, 916 N.E.2d 205, *trans. denied* (citation omitted).

## The Money Judgment

[13] LaPlace argues that the trial court improperly entered a money judgment against it because the Note and mortgage did not allow for that relief. Lakeland contends that LaPlace ignores the provisions in the Note and mortgage allowing for the relief it sought and that LaPlace "wrongly conflates a deficiency judgment that may follow the sale of the mortgaged property with the initial money judgment in a foreclosure action." Appellee's Br. at 16.

[14] In support of its argument, LaPlace relies on the following provision of the Note titled "Exculpation."

> Subject to the qualifications below, Lender shall not enforce the liability and obligation of Borrower to perform and observe the obligations contained in this Note, the Mortgage or in any of the other Loan Documents by any action or proceeding wherein a money judgment shall be sought against Borrower, except that Lender may bring a foreclosure action, a trustee sale, an action for specific performance or any other appropriate action or

> proceeding to enable the Lender to enforce and realize upon its interests under this Note, the Mortgage and the other Loan Documents, or in the Mortgaged Property, the Rents (as defined in the Mortgage), or any other collateral given to Lender. . . By accepting this Note, the Mortgage and the other Loan Documents, Lender agrees that it shall not except as otherwise herein provided, sue for, seek or demand any deficiency judgment against Borrower in any such action or proceeding under or by reason of or under or in connection with this Note, the Mortgage or the other Loan Documents.

Appellants' App. Vol. II, p. 82. The mortgage document contains nearly identical language in a section titled "Recourse Provisions." *Id.* at 155.

[15] LaPlace claims that the Exculpation and Recourse Provisions created a nonrecourse loan. "This means that the mortgagor has no personal liability for the indebtedness secured by the subject property." *Forty-One Associates, LLC v. Bluefield Associates, L.P.*, 809 N.E.2d 422, 427 (Ind. Ct. App. 2004) (citing *Huntingburg Prod. Credit Ass'n v. Griese*, 456 N.E.2d 448, 452 (Ind. Ct. App. 1983) (stating that a mortgage may secure the debt of another without the mortgagor assuming personal responsibility for the debt)). And the owner of a property must assume the risk of loss. *Humphries v. Ables*, 789 N.E.2d 1025, 1035 (Ind. Ct. App. 2003) (citing *Ridenour v. France*, 442 N.E.2d 716, 717 (Ind. Ct. App. 1982) (upon consummation of real estate contract, purchasers become equitable owners and, absent contrary agreement, must assume risk of loss)).

[16] Lakeland argues that the quoted language "merely limited Lakeland's ability to enforce a judgment entered against LaPlace by restricting enforcement of that

judgment to the extent of LaPlace's interest in the Mortgaged Property, Rents, and other collateral given to Lakeland." Appellee's Br. at 21. Lakeland cites to additional language in the Note stating that "any judgment in any such action or proceeding shall be enforceable against [LaPlace] only to the extent of [LaPlace's] interest in the Mortgaged Property, in the Rents and in any other collateral given to [Lakeland]." Appellants' App. Vol. II, p. 82. Moreover, Lakeland observes that the Mortgage allowed Lakeland, in the event of LaPlace's default, to "take such action . . . as it deems advisable to protect and enforce its rights against [LaPlace]" including the ability to "recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage." *Id.* at 142–43.

[17] Ultimately, the trial court agreed with Lakeland and concluded that "the Note does entitle Plaintiff[] to a money judgment against Defendant LaPlace in the amount of the remaining balance of the loan." Appellants' App. Vol. II, p. 31. The court observed that "to proceed with a foreclosure action on the property subject to the Note, the Plaintiff must necessarily receive a money judgment in order to credit bid during a sheriff's sale or sale under" Indiana Code section 32-29-7-4. *Id.*; *see* Ind. Code § 32-30-10-5 ("In rendering judgment of foreclosure, the courts shall . . . give personal judgment against any party to the suit liable upon any agreement for the payment of any sum of money secured by the mortgage. . ."). The court agreed with Lakeland that the Exculpation and Recourse provisions limit Lakeland's ability to enforce collection of the

judgment, but do not limit its ability to obtain a money judgment against LaPlace.

[18]     We agree that Lakeland is entitled to foreclose on the property and seek a monetary judgment. The terms of the Note and Mortgage specifically allow Lakeland to "bring a foreclosure action." Appellants' App. Vol. II pp. 82, 155. And the Note and Mortgage repeatedly state that Lakeland may enforce its rights under the contracts by obtaining a judgment against LaPlace. *Id.* at 82, 142–43. However, pursuant to the Exculpation and Recourse provisions, Lakeland may not seek a further deficiency against LaPlace following the auction of the property.[4] We therefore affirm the trial court's entry of summary judgment in Lakeland's favor as to Count I of the complaint.

## Payments to Plaza Properties and L.G.R. Realty after Default

[19]     Plaza Properties and L.G.R. Realty ("collectively the Appellants") argue that the trial court erred when it concluded that the assignment of rents and leases between Lakeland and LaPlace gave Lakeland superior rights to the fees paid to the Appellants. The Appellants contend that the payments they received after LaPlace's default were appropriate under the various agreements because Lakeland did not terminate the management and assignment of the lease

---

[4] Lakeland argued in the summary judgment proceedings that it was entitled to a judgment, but conceded that enforcement of any judgment obtained was limited by the recourse provisions of the Note and Mortgage. Appellant's App. Vol. V, p. 51. Moreover, Lakeland admitted that its ability to enforce a judgment beyond the value of the Mortgaged Property, rents and other collateral is governed by the Note's "bad boy" provisions, which are not at issue in this litigation. Appellee's Br. at 12–13; Appellants' Appendix Vol. V, p. 55.

agreements until January 2016. Lakeland contends that the trial court properly concluded that any rights the Appellants had to management fees and commissions terminated when LaPlace defaulted on the note on January 1, 2015.

[20] Lakeland argues that the following provision in the Assignment of Leases and Rents clarifies that its right to rents and commissions collected after LaPlace's January 1, 2015 default is superior to all other parties.

> Whenever an Event of Default exists, the license granted to [La Place] in this Assignment shall automatically terminate and be revoked, and [Lakeland] shall immediately and without notice, either in person, by agent, or by receiver to be appointed by a court, be entitled, whether or not [Lakeland] enters upon or takes control of the Mortgaged Property, to collect and possess the Rents[.]

Appellants' App. Vol. II., p. 32.

[21] In addition, the Assignment includes a "waterfall" provision that provides: "apply the Rents so collected, first to the payment of the Debt, next to the performance and discharge of the Obligations, and next to the payment of all expenses associated with the ownership and operation of the Premises and Improvements." *Id*. Moreover, Lakeland argues that LaPlace could not "confer upon Plaza Properties and L.G.R. rights that it did not possess," and LaPlace's promise "to pay Plaza Properties and L.G.R. a portion of the Rents as management fees or leasing commissions" was "subject to its revocable, limited

license to collect and receive those Rents under the Assignment." Appellee's Br. at 26–27.

[22] The trial court agreed and concluded that Lakeland "holds the superior claim for proceeds arising from rents and leases." Appellants' App. Vol. II, p. 33. The trial court found that the Appellants' right to proceeds from rents and leases for performing services under the Management and Leasing Agreements terminated when LaPlace defaulted. *Id*.

[23] The Appellants argue that Lakeland could have terminated the management agreements with thirty days' written notice in the event that LaPlace defaulted on the loan, but Lakeland did not terminate the management and leasing agreements until the receiver was appointed over a year after LaPlace defaulted.[5] The Appellants also observe that under the Manager's Consent and Subordination of Management Agreement, in the event of LaPlace's default, Lakeland had authority to require Plaza Properties to turn over all income and proceeds generated by the mortgaged properties directly to Lakeland. Appellants' App. Vol. IV, p. 169. But Lakeland never did so. Finally, the Appellants also insist that LaPlace's breach of the various contracts at issue in this appeal "does not diminish the rights Plaza Properties and L.G.R. [Realty]

---

[5] Lakeland did not have copies of the management agreements between LaPlace and Plaza Properties until LaPlace's counsel provided copies at the January 8, 2016 hearing concerning the request for the appointment of a receiver.

enjoyed under the Management Agreements and Leasing Agreement, respectively." Appellants' Br. at 12.

[24] LaPlace was bound by the terms of the Assignment of Leases and Rents. The Assignment provided that any rents collected from the properties were to be used "first to the payment of the Debt" owed under the Note. And, pursuant to the unambiguous terms of the Assignment, once LaPlace defaulted on the loan, its right to collect rents on the mortgaged properties ceased to exist.

[25] Pursuant to the unambiguous terms of the Assignment, Lakeland was granted superior interest in any rents collected from the mortgaged property. Moreover, the management agreement executed between LaPlace and Plaza Properties (signed by the same individual on behalf of both entities) provided that the

> Management Agreement does not create an interest in real property or constitute a covenant running with the Property. The Management Agreement and any and all liens, rights and interests . . . owned, claimed or held, by [Plaza Properties] in and to the Property, are and shall be in all respects subordinate and inferior to the liens and security interests created or to be created for the benefit of [Lakeland], its successors and assigns, and securing the repayment of the Note . . .

Appellant's App. Vol. IV, p. 167. Similarly, the Mortgage references the Management Agreements between LaPlace and Plaza and states that the "fee due under the Management Agreement, and the terms and provisions of the Management Agreement, are subordinate to this Mortgage and the Property Manager shall attorn to Mortgagee." Ex. Vol., Ex. 1, p. 10.

[26] Under their agreements with LaPlace, the Appellants are entitled to management fees and commissions for management and leasing of the properties. But Lakeland was not a party to those agreements. Their remedy is against LaPlace, with whom they contracted to perform those services. [6]

[27] After LaPlace defaulted on the Note, LaPlace's right to collect rents was revoked, and Lakeland's right to the rents is superior to any right the Appellants have by virtue of their agreements with LaPlace. We therefore agree with the trial court that under the terms of the Assignment, once LaPlace defaulted "there is no question that Lakeland now holds the superior claim for proceeds arising from rents and leases."[7] Appellants' App. Vol. II, p. 33. For all of these reasons, we affirm the trial court's entry of summary judgment on Count III of Lakeland's complaint.

---

[6] Whether Plaza Properties and L.G.R. Realty provided the services LaPlace contracted with them to provide is not relevant to our consideration of the contractual terms at issue in this appeal. We therefore do not address the Appellants' claim that the trial court abused its discretion when it struck two paragraphs of the Vollman Affidavit, in which the affiant concluded that Plaza and L.G.R. fulfilled all of their obligations under the terms of their contracts with LaPlace.

[7] Throughout these proceedings, Lakeland argued that it had a superior interest in all rents collected after LaPlace defaulted on January 1, 2015. Appellants' App. Vol. V, pp. 36–37. But Lakeland also stated that it was only seeking to foreclose the rents collected after the receiver was appointed on January 8, 2016, and the rents collected between the date of default and the date the receiver was appointed relate to Lakeland's claim for conversion. Appellants' App. Vol. V, pp. 56–57; *see also* Tr. pp. 80–81. Therefore, the Appellants argue that the trial court erred when it concluded that Lakeland is entitled to all rents collected after LaPlace's January 1, 2015 default. We disagree. The trial court was asked to interpret the terms of the Assignment. The court did so, and entered a judgment consistent with its interpretation.

# Conclusion

The trial court properly concluded that there were no genuine issues of material fact and that Lakeland was entitled to judgment as a matter of law on Counts I and III of its Complaint against the Defendants.

Affirmed.

Vaidik, C.J., and Crone, J., concur.